**In re Theodore Martin BLUTTER, Debtor.**

**Theodore Martin BLUTTER, Plaintiff,**

v.

**UNITED STATES of America, DEPARTMENT OF I.R.S. and New York State Dept. of Taxation, Defendants.**

**Bankruptcy No. 89B 12313(TLB).**
**Adv. No. 89–6085A.**

United States Bankruptcy Court,
S.D. New York.

Feb. 7, 1995.

Office of Atty. Gen. by Audrey J. Wohlgemuth, Litigation Bureau, State of N.Y., New York City, for defendants.

Salon, Marrow & Dyckman by Richard P. Romeo, New York City, for debtor/plaintiff.

*DECISION ON MOTION TO DECLARE TAX OBLIGATION DISCHARGEABLE*

TINA L. BROZMAN, Bankruptcy Judge.

At issue is whether a chapter 7 debtor who has failed to notify the New York State Department of Taxation (the "State") of an

assessment by the Internal Revenue Service (the "IRS") should have his obligation discharged for the additional state tax due.[1]

## I.

In February, 1987, the IRS assessed a tax deficiency against Theodore Blutter based upon its conclusion after an audit of his tax return for the year 1977 that he had taken improper deductions. This necessitated a filing by Blutter with New York State, section 659 of whose Tax Law provides in part that "If the amount of a taxpayer's federal taxable income ... is changed or corrected ... the taxpayer shall report such change or correction ... within ninety days after the final determination of such change [or] correction...." Blutter delayed reporting the assessment to the State until November, 1987, considerably longer than the prescribed ninety days. Notwithstanding Blutter's delay, the State had received notice of the assessment prior to November, presumably from the IRS, which typically provides such information to state tax authorities.

In September, 1989, Blutter filed his chapter 7 petition. The State filed a proof of claim during that same month. Although the case was in due course closed, I thereafter reopened it to consider the issue of the dischargeability of the State's tax claim for 1977.

## II.

The State contends that Blutter's failure to report the federal assessment in a timely fashion precludes discharge of the resulting state tax obligations, in accordance with section 523(a)(1)(B)(ii) of the Bankruptcy Code,[2] which provides that a debtor is not discharged of any tax obligation "with respect to which a return, if required ... was filed after the date on which such return was last due under applicable law ... and after two years before the date of the filing of the petition...."

The debtor's responses are two. First, he contends that the fact that the State's notice of the assessment from the IRS was sufficient to satisfy the requirements of the New York Tax Law despite the fact that the information was not supplied by him. Second, the debtor contends that the "report" required by the State is not the functional equivalent of a "return" and that its filing is therefore not controlled by section 523 of the Code.

## III.

■ Courts differ as to whether or not a state taxing authority's knowledge of a change in the debtor's federal tax obligation is a valid substitute for a debtor's reporting it. At least one court has suggested that it is. *See Blackwell v. Virginia Dep't of Taxation*, 115 B.R. 86, 89 (Bankr.W.D.Va.1990). Another court has distinguished between cases where a debtor underreports his income and cases where the debtor merely takes improper deductions. *See Dyer v. Georgia Dep't of Revenue (In re Dyer)*, 158 B.R. 904, 906 (Bankr.W.D.N.Y.1993). The more persuasive view, and, I believe, the one most consistent with the purposes of section 523, is that a debtor cannot evade his obligations under applicable law by relying on governmental authorities to fulfill them for him. *Jones v. Georgia Dep't of Revenue (In re Jones)*, 158 B.R. 535, 538 (Bankr.N.D.Ga. 1993); *Haywood v. Illinois (In re Haywood)*, 62 B.R. 482, 484–86 (Bankr.N.D.Ill.1986); *In re Bergstrom*, 949 F.2d 341, 343 (10th Cir. 1991) (holding that filing of substitute return by IRS on behalf of debtor did not fulfill his filing obligations under § 523(a)(1)(B)); *Rench v. United States (In re Rench)*, 129 B.R. 649, 650–51 (Bankr.D.Kan.1991); *Hoffman v. United States (In re Hoffman)*, 76 B.R. 853, 854 (Bankr.S.D.Fla.1987). Section 523(a)(1)(B) is addressed to the conduct of the debtor, and is designed to insure that a debtor's misconduct is not rewarded. *See* Senate Report No. 95–1106, 95th Cong.Sess. 22 (1978). Here, the debtor had a legal

1. The IRS was initially a party to this dispute and contested the debtor's discharge with respect to his federal tax liability. Since then, however, the IRS has come to terms with the debtor and has agreed that it would not contest his discharge.

2. 11 U.S.C. § 101 *et seq.* (hereinafter the "Code").

obligation to fulfill the reporting requirement of New York Tax Law § 659. The State's acquisition of knowledge of the deficiency assessment did not change that. "Merely because the State caught up to the taxpayer through its diligence does not free that person from the consequences of § 523(a)(1)(B)(i)." *Haywood*, 62 B.R. at 485. The analysis under § 523(a)(1)(B)(ii) is identical. To hold otherwise would be to differentiate between equally errant debtors based, not on anything they did, but on what the taxing authorities did.

Blutter did not cite to *Dyer, supra,* in support of his argument, despite the fact that the ruling in that case, if applied here, would lead to a favorable result for the debtor. In *Dyer,* the court held that the Code's reference to tax obligations "with respect to which a return, if required, was not filed" meant that as long as at least one return was filed with respect to particular income, it did not matter for purposes of determining dischargeability that the debtor did not file every return required by the state. The judge premised his decision on what he believed to be the plain meaning of the statute and on the oft-cited maxim that exceptions to discharge are to be construed narrowly in favor of the debtor. *Dyer,* 158 B.R. at 906. This analysis led the judge to conclude that where a debtor filed at least one return which was complete as to reported gross income, even if it included improper deductions, then section 523 was not applicable. I respectfully disagree.

■ First, the wording of section 523 provides no basis for the distinction between underreporting of income and overdeducting drawn in *Dyer.* The purpose of section 523, as I have explained, is to avoid rewarding debtor misconduct with a bankruptcy discharge. This goal would not be accomplished if courts awarded discharges to debtors who have only partially fulfilled their statutory obligations. Thus, it is only reasonable to assume that the reference in section 523 to the failure to timely file "a return" means exactly that, and not "any returns at all" as the *Dyer* court would apparently have it mean. Second, although it is true as *Dyer* states that discharge provisions are generally

construed narrowly, it is also the case that "dischargeability exceptions in § 523(a) demonstrate Congress' decision to allow certain competing public interests to override bankruptcy's 'fresh start' purpose[,]" and should therefore not be construed in a way that would defeat those interests. *Smith v. New York State Higher Education Services Corp. (In re Smith),* 103 B.R. 392, 395 (Bankr. N.D.N.Y.1988), *citing Forsdick v. Turgeon,* 812 F.2d 801, 802 (2d Cir.1987). One of those competing public interests is the integrity of the tax systems. *See* Senate Report No. 95–989, at 13–14, 95th Cong. (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. "The Bankruptcy Code takes a very narrow view of the dischargeability of tax claims owed to any governmental unit." *Etheridge v. State of Ill.,* 127 B.R. 421, 422 (C.D.Ill.1989) (quoting *Ginsberg on Bankruptcy,* ¶ 11,3020 at 11.031 (1988 Supp.)).

■ Blutter's argument that a "report" is not a "return" for the purposes of section 523, while facially appealing, is ultimately unpersuasive. When analyzing a Code provision, the court looks, of course, to its plain meaning. However, the plain meaning of a statute is derived not from a particular word or sentence within it, but rather from "the provisions of the whole law, and [ ] its object and policy." *United States Nat'l Bank of Oregon v. Independent Ins. Agents,* —— U.S. ——, ——, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (citation omitted). Thus, in order to correctly construe the meaning of "return" in section 523, one must consider the rationale behind the use of the word. That rationale suggests that "return" be interpreted more broadly than the debtor urges.

The policy consideration that governs section 523, that is, the notion that a debtor should not be rewarded with a discharge for failing to comply with his filing obligations, *see Haywood,* 62 B.R. at 485, applies regardless of whether a document is labeled a "return" or a "report." *cf. H & H Beverage Distributors v. Dep't of Revenue (In re H & H Beverage Distributors),* 850 F.2d 165, 168 (3d Cir.1988), *cert. denied,* 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988) (in a case under section 362, "Code contemplated that all governmental taxing entities should re-

ceive equal treatment"). Indeed in many states when the taxpayer receives a federal deficiency assessment, as did Blutter, the taxpayer is required to file, not a report, but an amended tax return. *See, e.g., Haywood,* 62 B.R. at 484–85 (Illinois law). Whether the information is imparted to the state via an amended return or a report should not make any difference as to the dischargeability of the tax obligation because in each instance the debtor has failed to file information with the state which would alert it to the debtor's underpayment of tax. *Blackwell,* 115 B.R. at 89, which the debtor cites as supporting the distinction he seeks to make, is inapposite. In that case, the government argued that its "reporting" requirement meant that the debtor was required to file an amended return, and that anything less than that would not constitute compliance, a proposition with which the court disagreed, because, "reporting" does not address a prescribed method of reporting. Here, however, the State does not contend that Blutter was required to file an amended return, and in fact maintains forms designed for the express purpose of reporting federal deficiency assessments. Blutter's failure to timely inform the State of the change in his federal taxes implicates the nondischargeability provision of § 523(a)(1)(B)(ii).[3]

I have considered the debtor's final argument with respect to section 507(a)(7)(A) of the Code and find it meritless. Accordingly, the debtor's motion to have his state tax obligation discharged is denied.

SETTLE ORDER consistent with this opinion.

---

3. That is not to say that a "report" is identical to a "return" under New York law. The very text of section 659 recognizes a distinction, by requiring taxpayers to file amended returns whenever amended returns are required by the IRS, but only reports when changes in federal tax liability are not accompanied by the need to file amended federal tax returns. However, the issue is not what a return is under New York law, or even under the Internal Revenue Code, but what it is for purposes of section 523 of the Bankruptcy Code.