208 B.R. 183 (1997)
In re Judy Elaine JERAULD, Debtor.
STATE OF CALIFORNIA FRANCHISE TAX BOARD, Appellant,
v.
Judy Elaine JERAULD, Appellee.
BAP No. SC-96-1816-RYRO, Bankruptcy No. 95-04873-M7, Adversary No. 96-90070-M7.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Argued and Submitted February 21, 1997.
Decided April 28, 1997.
Leslie Branman Smith, Deputy Atty. Gen., San Diego, CA, for Franchise Tax Bd. of Cal.
Derek J. Lobo, Law Offices of Radmila A. Fulton, San Diego, CA, for Judy Elaine Jerauld.
Before: RYAN, RUSSELL and OLLASON, Bankruptcy Judges.
RYAN, Bankruptcy Judge:
Julie Elaine Jerauld ("Debtor") filed a complaint against the State of California, Franchise Tax Board ("FTB"), to have certain tax claims for 1982 and 1989 discharged. The FTB did not oppose the discharge of the 1989 tax claim but did contest the dischargeability of the 1982 claim (the "Claim"). At the trial on stipulated facts, the bankruptcy court held that the Claim was discharged and enjoined the FTB from instituting or continuing any action to collect on the Claim. The FTB appealed. We AFFIRM the bankruptcy court's decision.

I. FACTS
In April 1983, Debtor and her former husband filed joint tax returns for the year 1982 with both the Internal Revenue Service ("IRS") and the FTB. On March 23, 1993, the IRS reassessed Debtor's taxes for the 1982 tax year in the amount of $14,166 (the "Reassessment") and notified the FTB of the Reassessment on April 29, 1993. Under § 18622 of the California Revenue and Taxation Code (the "CRTC"),[1] a taxpayer must notify the FTB of any corrections made by the IRS within six months after a reassessment. Debtor did not notify the FTB of the Reassessment. *185 On January 10, 1994, the FTB assessed additional taxes against Debtor based on the Reassessment. Debtor was appropriately notified of the Reassessment, and it became final more than 240 days prior to the bankruptcy filing.
On May 11, 1995, Debtor filed a bankruptcy petition under chapter 7. The FTB was scheduled as a creditor with a claim for 1982, 1989, 1990, 1991, and 1992 income taxes in the aggregate amount of $14,926.81. Debtor received her discharge on September 16, 1995.
After the discharge, in response to an alleged wage garnishment to collect approximately $10,938 in 1982 taxes, Debtor filed a complaint to determine that the 1982 and 1989 taxes were discharged and to enjoin future collection efforts (the "Complaint"). The FTB is not seeking to collect any taxes for the 1989 tax year; therefore, only the Claim is currently in dispute between the parties.
The parties stipulated to these facts and agreed that the sole issue to be tried was whether, under the provisions of § 523(a)(1)(B)(i) of the Bankruptcy Code (the "Code"),[2] Debtor's failure to notify the FTB of the Reassessment constituted a failure to file a tax return.
The trial on these stipulated facts was held on August 1, 1996. On August 15, 1996, an order discharging the Claim and enjoining any action to collect on the Claim was entered by the bankruptcy court. On August 22, 1996, the FTB filed its notice of appeal.

II. ISSUE ON APPEAL
The sole issue on appeal is whether Debtor's failure to notify the FTB of the Reassessment constituted a failure to file a tax return under § 523(a)(1)(B)(i).

III. STANDARD OF REVIEW
We review the bankruptcy court's findings of fact for clear error and the court's conclusions of law de novo. Neben & Starrett v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 880 (9th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996) (citing Sousa v. Miguel (In re United States Trustee), 32 F.3d 1370, 1372 (9th Cir.1994)). Because the parties agreed to stipulated facts in the trial before the bankruptcy court, the issues on appeal are legal issues which we review de novo. See Western Farm Credit Bank v. Auza (In re Auza), 181 B.R. 63, 66 (9th Cir. BAP 1995); Wood v. Godfrey (In re Godfrey), 102 B.R. 769, 770 (9th Cir. BAP 1989).

IV. DISCUSSION
Code § 523(a)(1)[3] excepts from discharge an income tax claim that satisfies the requirements of Code § 507(a)(8), if a required tax return is not filed. A § 507(a)(8) tax is unsecured and is measured by income. It also has to be: (1) for a tax year in which a return was last due, including extensions, more than three years before the bankruptcy; (2) assessed more than 240 days prior to the bankruptcy; and (3) covered by a tax return filed at least two years before the bankruptcy.[4]
*186 Debtor's 1982 income tax return was due on April 15, 1983, more than three years prior to Debtor's bankruptcy. Debtor filed her tax return on or about April 20, 1983, more than two years before the bankruptcy. Additionally, the taxes were assessed on January 10, 1994, more than 240 days prior to the bankruptcy. The Claim, therefore, meets all the requirements of § 507(a)(8).
For the FTB to establish that the Claim is nondischargeable under § 523(a)(1), in addition to satisfying § 507(a)(8), the FTB must show that Debtor did not file a required return. See 11 U.S.C. § 523(a)(1)(B)(i) (1994). The FTB argues that Debtor failed to report the Reassessment as required by former CRTC § 18451. Former CRTC § 18451 provided, in relevant part:
If the amount of gross income or deductions for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue . . . such taxpayer shall report such change or correction . . . within 90 days after the final determination of such change or correction.. or as required by the Franchise Tax Board, and shall concede the accuracy of such determination or state wherein it is erroneous. Such changes or correction need not be reported unless they affect the amount of tax payable under this part. Any taxpayer filing an amended return with such department shall also file within 90 days thereafter an amended return with the Franchise Tax Board which shall contain such information as it shall require.
Cal. Rev. & Tax Code § 18451 (West 1993) (repealed 1994); see Cal. Rev. & Tax Code § 18622 (West 1996).
Former CRTC § 18451 specifically places the burden on the taxpayer to report any changes or corrections from his federal tax return to the FTB. In Vitaliano v. Franchise Tax Board (In re Vitaliano), 178 B.R. 205, 207-08 (9th Cir. BAP 1995), we held that the submission of Revenue Agent's Reports[5] by the IRS to the FTB did not relieve the taxpayer from his reporting obligations under former CRTC § 18451. Id. In this case, the parties agree that Debtor did not comply with the reporting requirements of former CRTC § 18451 regarding the Reassessment.[6]
However, the FTB further contends that this failure is the equivalent of failing to file a required tax return under § 523(a)(1)(B)(i). In support of this contention, the FTB relies on Blutter v. Unites States Dep't of I.R.S. (In re Blutter), 177 B.R. 209, 210 (Bankr. S.D.N.Y.1995).
In Blutter, the IRS assessed a tax deficiency against the debtor. Id. The New York statute provided that the debtor shall report the change to the state. Id. In holding the state tax claim nondischargeable, the court held that the failure by the debtor to comply with the reporting requirement was the *187 equivalent of failing to file a required return under § 523(a)(1)(B)(i). Id. at 212. The court reasoned that it is immaterial for dischargeability purposes whether a debtor is to inform a state taxing authority of a change by a report or an amended return, because in either case "the debtor has failed to file information with the state which would alert it to the debtor's underpayment of tax." Id. In essence, the court concluded that a failure to comply with the reporting requirements, irrespective of the designated format, justifies the denial of discharge of a tax claim under § 523(a)(1)(B)(i) Id. at 211.
In response, Debtor cites Blackwell v. Virginia Dep't of Taxation (In re Blackwell), 115 B.R. 86, 89 (Bankr.W.D.Va.1990), where the court held that the statutory requirement to file a report regarding a federal tax change was not the same as a requirement to file an amended return. Id. at 89. The Virginia Department of Taxation relied on two Illinois cases, Haywood III v. Illinois Dep't of Revenue (In re Haywood. III), 62 B.R. 482, 485 (Bankr.N.D.Ill.1986), and Cohn v. Illinois Dep't of Revenue (In re Cohn), 96 B.R. 827, 828 (Bankr.N.D.Ill.1988), for support of its contention that the debtor was required to file an amended return. Blackwell, 115 B.R. at 88. The Blackwell court distinguished these two cases in that, unlike the Virginia statute, the Illinois statute specifically provided for the filing of an amended return. It also emphasized that exceptions to discharge are to be construed narrowly, that is strictly against the objecting creditor and liberally in favor of the debtor. Id. Additionally, the court stated that the purpose behind § 523(a)(1)(B)(i) was to "except from discharge taxes to which a debtor willfully attempted to evade or defeat by not filing a return." Id. at 89. The court found no evidence that the debtor willfully attempted to evade or defeat the adjusted state tax. Id.
The law in this area can be summarized as follows: (1) where the statute requires a debtor to notify it of a federal tax change by filing an amended return, a failure to file will cause the tax to be nondischargeable under § 523(a)(1)(B)(i);[7] (2) the filing of the original return is sufficient to satisfy the § 523(a)(1)(B)(i) requirement;[8] (3) where the filing of an amended return is not the only way under the statute to notify the state taxing authority, the state cannot be said to have required the filing of an amended return;[9] (4) whether the statute requires notification by report or amended return, the tax debt is nondischargeable if the debtor fails to notify the state of the change;[10] and (5) where the statute calls for notification of a change by filing a report, this is not the equivalent of requiring an amended return.[11]
Under former CRTC § 18451, California required a taxpayer to report to the FTB any federal tax change within 90 days after the IRS determination became final. See Cal. Rev. & Tax Code § 18451 (West 1993) (repealed 1994); see also Cal. Rev. & Tax Code *188 § 18622 (West 1996). However, no report was required if the change did not affect the amount of the tax payable. Additionally, a taxpayer had to file an amended return with the FTB if the taxpayer had filed an amended return with the IRS. Cal. Rev. & Tax Code § 18451 (West 1993) (repealed 1994). These requirements were unambiguously stated in former CRTC § 18451.
California law provides that when a statute is unambiguous on its face, we must take the statute as we find it and not try to embark on a journey to discover legislative intent. Wells Fargo Bank v. Bank of America, 32 Cal.App.4th 424, 38 Cal.Rptr.2d 521, 526 (1995); DaFonte v. Up-Right. Inc., 2 Cal.4th 593, 7 Cal.Rptr.2d 238, 242, 828 P.2d 140, 144 (1992). In order to determine what a statute means, "we first consult the words themselves, giving them their usual and ordinary meaning." Smith v. Fair Employment & Hous. Comm'n, 12 Cal.4th 1143, 51 Cal. Rptr.2d 700, 705, 913 P.2d 909, 914 (1996). Accordingly, when the language of the statute is clear and unambiguous, there is no need for construction. DaFonte, 7 Cal. Rptr.2d at 242-43, 828 P.2d at 144-43. Applying these principles of California law to the applicable language of former CRTC § 18451, California did not require that a taxpayer file an amended return unless the taxpayer filed an amended return with the IRS.
Section 523 (a)(1)(B)(i) reads "with respect to which a return, if required . . . was not filed." The requirement for the filing of a tax return is set by the taxing entity that assesses the applicable tax. Because California did not require the filing of an amended return under former CRTC § 18451 unless the same was filed with the IRS, Debtor did not have to file an amended return to notify the FTB of the Reassessment.
Citing Blutter, the FTB argues that even if Debtor did not have to file an amended return under former CRTC § 18451, her failure to file the required report was the equivalent of not filing a required return under § 523(a)(1)(B)(i). We are unwilling to follow the Blutter court's holding on this issue.
Congress specifically excepted from discharge under § 523(a)(1)(B)(i) tax claims where a debtor failed to file a required return. The language used to describe the exception is clear and unambiguous. Where the statutory language is plain, the inquiry ends and the sole function of the court is to enforce the statute according to its terms. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). In Ron Pair, the Supreme Court stated that "[t]he plain meaning of legislation should be conclusive, except in the `rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" Id. at 242, 109 S.Ct. at 1031 (citing Griffin v. Oceanic Contractors. Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).
The plain meaning of the word "return" should be conclusive, as it has a very specific meaning in the world of taxation. Certainly, taxpayers know what it means to have to file a tax return; they do it each year.
The legislative history of § 523(a)(1)(B)(i) also leaves no doubt that the word "return" is used technically to mean a tax return that is required by taxing authorities for taxpayers to set forth their tax liabilities.[12] Therefore, restricting § 523(a)(1)(B)(i) to its plain meaning is consistent and not demonstrably at odds with Congressional intent.
*189 Nothing in the legislative history or the case law supports the Blutter court's view that "[w]hether the information is imparted to the state via an amended return or a report should not make any difference as to the dischargeability of the tax obligation because in each instance the debtor has failed to file information with the state which would alert it to the debtor's underpayment of tax." Blutter, 177 B.R. at 212. With all due respect to the Blutter court, the difference is that in the case of a debtor's failure to file an amended tax return, Congress specifically carved out an exception to discharge. "[E]xceptions to dischargeability should be strictly construed in order to serve the . . . [Code's] purpose of giving debtors a fresh start." Industrie Aeronautiche E. Meccaniche Rinaldo Piaggio v. Kasler (Matter of Kasler), 611 F.2d 308, 310 (9th Cir.1979) (citing Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)).[13]
Here, Debtor filed her return for the 1982 tax year. Nothing in the facts show that Debtor filed a false return or sought to evade her tax obligations. Later, the IRS reassessed her income taxes for 1982, and Debtor failed to notify the FTB. Again, the facts do not indicate that Debtor's failure to comply with the former CRTC § 18451 was motivated by an attempt to evade the paying of any additional state tax. Moreover, the FTB does not allege any fraud or wrongdoing on the part of Debtor in connection with her 1982 taxes. Its sole basis for asserting the nondischargeability of its claim is Debtor's failure to file a report of the Reassessment as required by former CRTC § 18451. Because we hold that the failure to file a report is not the same as a failure to file a required tax return, the claim of the FTB is not excepted from discharge under § 523(a)(1)(B)(i)

V. CONCLUSION
Former CRTC § 18451 required Debtor to file a report of the Reassessment. This notice requirement is not the equivalent of requiring Debtor to file an amended tax return. Section 523(a)(1)(B)(i) excepts from discharge a debt if the debtor fails to file a required tax return. Because former CRTC § 18451 did not require Debtor to file an amended return, § 523(a)(1)(B)(i) does not apply, and the bankruptcy court correctly held that the FTB claim was discharged. Accordingly, we AFFIRM the decision of the bankruptcy court.
NOTES
[1] See Cal. Rev. & Tax Code § 18622 (West 1996). The stipulation refers to CRTC § 18622, which is the successor to former CRTC § 18451. CRTC § 18622 became operative on January 1, 1994. Because the duty to report the Reassessment arose before January 1, 1994, former CRTC § 18451 is the relevant statutory provision governing Debtor's duty to report the Reassessment to the FTB. The parties acknowledge this by referring to former CRTC § 18451 in their briefs as the controlling statutory law.
[2] The Code is set forth in 11 U.S.C. §§ 101-1330 (1994). Unless otherwise indicated, all "§" references are to the Code.
[3] Section 523(a)(1) states, in relevant part:

A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt  (1) for a tax or a customs duty 
(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
(B) with respect to which a return, if required 
(i) was not filed; or
(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.
11 U.S.C. § 523(a)(1) (1994).
[4] Section 507(a)(8)(A) states, in relevant part:

The following expenses and claims have priority in the following order:
(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for 
(A) a tax on or measured by income or gross receipts 
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of filing of the petition; or
(iii) other than a tax of the kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.
11 U.S.C. § 507(a)(8)(A) (1994).
[5] Revenue Agent's Reports ("RAR") are submitted by the IRS to a state taxing authority to inform that state agency about a change in the taxpayer's federal taxes. In Vitaliano, the RAR informed the FTB that the IRS had made changes in the taxpayer's federal returns and had assessed deficiencies. See Vitaliano, 178 B.R. at 206.
[6] We note at the outset that, based solely on the stipulated facts, the FTB has failed to include a crucial fact relevant to our analysis. Former CRTC § 18451 requires the state taxpayer to provide notice to the FTB of a change in the amount of gross income or allowable deductions. The stipulated facts state that Debtor failed to notice the FTB of the Reassessment. There is no stipulated fact that the Reassessment resulted from a change in Debtor's gross income or allowable deductions. It is possible that the Reassessment occurred for some other reason, which of course would not have triggered the notice requirement under former CRTC § 18451. However, because Debtor has not argued this point and has treated the Reassessment as resulting from a change in her gross income, we will address the underlying legal issues presented in this appeal.
[7] See Jones v. Georgia Dep't of Revenue (In re Jones), 158 B.R. 535, 537 (Bankr.N.D.Ga.1993) ("plaintiff's tax liability is nondischargeable if he did not file a required return with the State of Georgia after the IRS reassessed his federal adjusted gross income. . . . The statute quite clearly indicates that a return here is required. . . ."); Cohn, 96 B.R. at 828 ("The court finds that the debtors were required to file amended returns . . . they did not file these returns and any taxes. are not dischargeable under the provisions of 11 U.S.C. Section 523(a)(1)(B)(i)."); Haywood, 62 B.R. at 485 ("The foregoing [statute] clearly establishes that the debtor was required to file amended State income tax returns . . . that if debtor did not file the amended tax returns.. the taxes due are non-dischargeable under 11 U.S.C. § 523(a)(1)(B)(i).").
[8] See Dyer v. Georgia Dep't of Revenue (In re Dyer), 158 B.R. 904, 906 (Bankr.W.D.N.Y.1993) ("This rule of construction [to construe § 523(a)(1)(B)(i) liberally in favor of the debtor] commands that dischargeable taxes are not converted into non-dischargeable taxes by a State's `requiring' successive returns . . . addressing the same basic information, or by a State's labeling all `amendments' or `notifications' as `returns.'").
[9] See Olson v. United States (In re Olson), 174 B.R. 543, 547 (Bankr.D.N.D.1994) (Because the state statute allowed for the state to alter the form of notification and there was evidence that the state had relieved the debtor of the obligation to file amended returns, the court held that for those years the state did not require returns within the meaning of § 523(a)(1)(B)(i).).
[10] Blutter, 177 B.R. at 212.
[11] Blackwell, 115 B.R. at 89.
[12] The Committee Report for § 523 states:

The House amendment retains the basic categories of nondischargeable tax liabilities contained in both bills, but restricts the time limits on certain nondischargeable taxes. Under the amendment, nondischargeable taxes cover taxes entitled to priority under Section 507(a)(6) of Title 11 and, in the case of individual debtors under chapters 7, 11, 13, tax liabilities with respect to which no required return has been filed or as to which a late return had been filed if the return became last due, including extensions, within 2 years before the date of the petition or became due after the petition, or as to which the debtor made a fraudulent return, entry or invoice or fraudulently attempted to evade or defeat the tax.
124 Cong. Rec. H11, 113-114 (Sept. 28, 1978); S. 17,430-1 (Oct. 6, 1978) (emphasis added).
[13] See also Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1297 (9th Cir.1994); Bugna v. McArthur (In re Bugna), 33 F.3d 1054, 1059 (9th Cir.1994) ("The [Bankruptcy] Code is designed to afford debtors a fresh start, and we interpret liberally its provisions favoring debtors.").