**In re Al LAPIN, Jr., Debtor.**

**FRANCHISE TAX BOARD, of the State of California, Appellant,**

v.

**Al LAPIN, Jr., Appellee.**

**BAP No. CC–98–1033–BSJ.**
**Bankruptcy No. LA 96–50259 ER.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 17, 1998.

Decided Oct. 16, 1998.

Anthony Sgherzi, Office of the Attorney General, Los Angeles, CA, for the State of California, Franchise Tax Board.

Mona S. Amer, Greenberg, Glusker, Fields, Clamin & Machtinger, Los Angeles, CA, for Al Lapin, Jr.

Before BRANDT, SNYDER [1], and JONES, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

### OVERVIEW

The California Franchise Tax Board (CFTB) appeals the bankruptcy court's order rejecting CFTB's sovereign immunity defense and finding CFTB in contempt of the discharge order and imposing sanctions. We REVERSE.

### FACTUAL BACKGROUND

Debtor Al Lapin, Jr. ("Lapin" or "Debtor") filed a petition for relief under Chapter 7 [2] on 4 December 1996. Lapin listed CFTB as an unsecured creditor with a claim of $147,560 for unpaid taxes for 1979 through 1982. CFTB did not file a proof of claim, nor was it a party in any adversary proceeding or motion prior to case closing. A discharge order

---

1. Hon. Paul B. Snyder, Bankruptcy Judge for the Western District of Washington, sitting by designation.

2. Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C., and all "rule" references are to the Federal Rules of Bankruptcy Procedure.

was entered on 17 March 1997, and the case was closed 27 March 1997.

On 7 May 1997 CFTB sent a letter to Lapin demanding payment for unpaid taxes for 1979–1982. In August, CFTB issued an Earnings Withholding Order (EWO) to Lapin's employer. Subsequently CFTB applied Lapin's 1996 tax refund to taxes due for previous years. (Lapin asserts those years to be 1979–1982, but CFTB's Return Information Notice does not indicate the tax years involved. As no other evidence was presented, the bankruptcy court declined to find the refund was applied to those years.)

CFTB asserted that Lapin's tax obligation was excepted from discharge under § 523(a)(1)(B) (unfiled tax return) pursuant to *In re Blutter,* 177 B.R. 209 (Bankr. S.D.N.Y.1995). *Blutter* held that failure by a debtor to report to the state a change in federal tax was the equivalent of failing to file a required return under § 523(a)(1)(B)(i). *Blutter,* 177 B.R. at 211–12. However, between the time the collection letter was sent and the time the EWO was issued, the Ninth Circuit BAP ruled to the contrary in *In re Jerauld,* 208 B.R. 183 (9th Cir. BAP 1997),[3] and *In re Rowley,* 208 B.R. 942 (9th Cir. BAP 1997).

On 21 October 1997, Lapin filed a motion to reopen the bankruptcy case and a motion for an order to show cause re: civil contempt against CFTB for violation of the discharge injunction. The court signed the order to show cause and set the matter for hearing on 24 November 1997. CFTB responded, asserting sovereign immunity, and Lapin filed a reply. After the hearing, the court took the matter under submission.

The bankruptcy court entered a memorandum decision and order on 31 December 1997, rejecting CFTB's sovereign immunity defense, finding CFTB in civil contempt of the court's discharge order for issuing the EWO against Lapin, and ordering the debtor to file and serve an itemization of his post-discharge attorneys' fees and costs incurred in connection with the motion. CFTB filed a notice of appeal on 12 January 1998, which was timely because 10 January 1998 fell on a

Saturday. Rule 9006(a). Although the memorandum states that sanctions are warranted, and the order requires the debtor to provide evidence of his attorneys' fees and costs, neither the memorandum nor the order states that the sanction is in fact Lapin's attorneys' fees, or that CFTB must pay that amount to Lapin. After hearing on 4 February 1998, the court ordered CFTB to pay Lapin $10,085.03 as sanctions for its violation of the discharge injunction.

### ISSUES

A. Whether the arguably premature filing of this appeal affects the panel's jurisdiction.

B. Whether the bankruptcy court has the power to impose civil contempt sanctions.

C. Whether Eleventh Amendment sovereign immunity bars the imposition of sanctions against CFTB for its violations of the discharge injunction.

D. Whether the Eleventh Amendment is not implicated when the bankruptcy court imposes sanctions to enforce its own order, as distinguished from the case where a private party sues a governmental unit.

### STANDARD OF REVIEW

The granting or denial of a sovereign immunity defense is an issue of law subject to de novo review. *In re Elias,* 218 B.R. 80, 82 (9th Cir. BAP 1998). An order imposing sanctions is reviewed for abuse of discretion. *In re Rainbow Magazine, Inc.,* 77 F.3d 278, 283 (9th Cir.1996).

### DISCUSSION

A. *Timing of Notice of Appeal.*

The 31 December order does not explicitly order CFTB to pay sanctions. However, the order states that CFTB is in contempt, and the underlying decision states that sanctions are warranted. Arguably, the order appealed from should have been the court's 4 February order directing CFTB to pay Lapin's attorney's fees as a sanction for violating the discharge injunction.

---

**3.** *Jerauld* is currently on appeal to the Ninth Circuit.

■ Rule 8002 provides for prematurely filed appeals:

A notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof.

Rule 8002(a). This rule appears to contemplate a situation, unlike this one, where the court has made an oral ruling which is then appealed before a written order has actually been entered. However, to the extent it can fairly be said that the 31 December memorandum and order implicitly (if not explicitly) imposed sanctions against CFTB and thus "announces" the court's decision, the notice of appeal should be treated as timely filed.

Alternatively, the 4 February order is arguably only an extension or clarification of the 31 December order. In any event, the issues on appeal were clearly raised in the 31 December order. Indeed, had CFTB waited and appealed the 4 February order, it would arguably have been foreclosed from arguing issues raised in connection with the 31 December order. The 31 December order is properly on appeal.

## B. *The Bankruptcy Court's Power to Impose Sanctions.*

CFTB asserts that under *Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd., Inc.)*, 827 F.2d 1281 (9th Cir.1987), the bankruptcy court lacked the authority to issue a civil contempt order. *Sequoia* held that bankruptcy courts do not have the inherent power of contempt and therefore bankruptcy judges seeking the issuance of contempt orders must certify facts to the district court for review de novo. However, CFTB's reliance on *Sequoia* is misplaced. In *Rainbow Magazine, Inc.*, the court held that after Congress' revisions to rule 9020 and in light of the Supreme Court's holding in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), "[a]ny restriction of the bankruptcy courts' power to sanction that could be inferred from *Sequoia* is no longer pertinent", and that bankruptcy courts inherently have the power to sanction. *Rainbow Magazine*, 77 F.3d at 284–85.

Nevertheless, CFTB argues that the bankruptcy court could not sanction it because CFTB was not a party to the bankruptcy and did not file a proof of claim. Again, CFTB relies on a case that is no longer good law, the Panel decision in *Rainbow Magazine*, 136 B.R. 545 (9th Cir. BAP 1992). In that case, the BAP upheld the bankruptcy court's award of sanctions against the debtor, but reversed sanctions against the debtor's principal, Caldwell, who was neither a party nor a signatory. The BAP reasoned that the plain language of Rule 9011 "does not contemplate sanctions against a person who is neither the person who signed the offending pleading nor a party." *Id.*, 136 B.R. at 552. Moreover, the BAP could find no case law involving the use of the court's inherent power as a basis to sanction an entity who is neither a party nor an attorney. *Rainbow Magazine*, 136 B.R. at 553.

On remand, the bankruptcy court reimposed sanctions, basing its action on the intervening decision in *Lockary v. Kayfetz*, 974 F.2d 1166 (9th Cir.1992), *cert. denied sub nom. Pacific Legal Foundation v. Kayfetz*, 508 U.S. 931, 113 S.Ct. 2397, 124 L.Ed.2d 298 (1993). In *Lockary*, the Ninth Circuit, interpreting *Chambers*, upheld an award of sanctions against an entity that was neither a party, attorney, nor signatory, but which had orchestrated a frivolous lawsuit. Caldwell appealed the sanction to the district court, which affirmed. The Ninth Circuit affirmed the district court, stating "our opinion in *Lockary* provided support for the exact proposition that the BAP was seeking—we allowed sanctions to be imposed against a nonparty and nonattorney under the court's inherent powers." *Rainbow Magazine*, 77 F.3d at 282.

Additionally, the Ninth Circuit has recognized the inherent power of the district court to impose attorneys' fees against a non-party to curb abusive litigation practices and to sanction a non-party whose actions or omissions caused the parties to incur additional expenses. *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir.1994).

■ Further, CFTB's premise that it was not a party to the proceedings is arguable. The term "party in interest" includes credi-

tors. *See* §§ 1109(b) and 1121(c). Certainly CFTB would have had standing in the bankruptcy to appear voluntarily and file a proof of claim or motion or adversary proceeding related to Lapin's state tax obligations. That it chose not to participate in the bankruptcy at all may bear on whether CFTB waived sovereign immunity, but does not render it a non-party. The discharge injunction is directed at "all creditors whose debts are discharged by this order." This includes CFTB. Consequently, CFTB cannot fairly be said to be a non-party in proceedings related to violations of the discharge order.

■ Read together, the authorities make clear that the bankruptcy court has the inherent powers of contempt, to sanction, and to sanction non-parties in appropriate circumstances. If not barred by CFTB's sovereign immunity, the bankruptcy court could sanction CFTB for violation of the discharge injunction.

### C. *Sovereign Immunity.*

CFTB asserted Eleventh Amendment sovereign immunity as a defense to Lapin's request for sanctions. As a result, CFTB argues, the bankruptcy court lacked the requisite subject matter jurisdiction to proceed with enforcement of its discharge injunction.

■ The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has interpreted this amendment as recognizing unconsenting states' immunity from suits brought by individuals. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 67–68, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Congress may, however, abrogate the states' immunity from suit so long as Congress (1) unequivocally expresses its intent to do so and (2) acts pursuant to a valid exercise of power. *Seminole,* 517 U.S. at 55.

1. *Intent.*

Applying this test to the Code, the first prong is satisfied by § 106(a), which provides:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. § 106(a) (1998). By its plain language, this section "clearly reflects Congress' intent to abrogate the states' Eleventh

Amendment immunity from suit in federal court." *Elias,* 218 B.R. at 83.

2. *Valid Exercise of Power.*

■ Two possible sources of power for this legislation are the Bankruptcy Clause and the Fourteenth Amendment.

a. *The Bankruptcy Clause.*

The Bankruptcy Clause provides:

The Congress shall have Power ... (4) To establish a uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States.

U.S. Const. art. I, § 8, cl. 4. Notwithstanding this grant of power, the Eleventh Amendment prevents Congress, acting pursuant to its Article I powers, from subjecting unconsenting states to suits brought by private parties in federal court. *Elias,* 218 B.R. at 84 (citing *Seminole,* 517 U.S. at 71–72). As a result, § 106 is ineffective as an attempt to abrogate the states' sovereign immunity pursuant to Congress' Bankruptcy Clause power. *Elias,* 218 B.R. at 84.

b. *The Fourteenth Amendment.*

■ In this case, the bankruptcy court concluded that, after *Seminole,* Article I most likely does not provide sufficient power for Congress to have enacted § 106, but that the Fourteenth Amendment does. Judge Robles found persuasive *Wyoming Dep't of Transp. v. Straight (In re Straight),* 209 B.R. 540, 552 (D.Wyo.1997), *aff'd on alternate holding of waiver,* 143 F.3d 1387 (10th Cir. 1998), and *In re Burke,* 203 B.R. 493, 497 (Bankr.S.D.Ga.1996), both of which reasoned that the protections afforded debtors under the bankruptcy code are privileges and immunities of federal citizenship. Through Section 5 of the Fourteenth Amendment, Congress has the authority to pass laws to prevent states from abridging privileges and immunities. *Burke,* 203 B.R. at 497. Thus, the bankruptcy court concluded, " § 106 represents a valid exercise of Congressional power under the Fourteenth Amendment."

Thereafter, however, this Panel decided *Elias,* which held, 218 B.R. at 84, that the Fourteenth Amendment does *not* provide the requisite power for Congress to abrogate states' sovereign immunity.

■ The Fourteenth Amendment provides, in relevant part:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

. . .

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV, § 1, § 5. "[T]he Fourteenth Amendment, by expanding federal power at the expense of state autonomy, had fundamentally altered the balance of state and federal power struck by the Constitution.... [T]hrough the Fourteenth Amendment, federal power extended to intrude upon the province of the Eleventh Amendment...." *Seminole,* 517 U.S. at 59. Thus, under the Fourteenth Amendment, Congress may abrogate state sovereign immunity protected by the Eleventh Amendment, *Elias,* 218 B.R. at 84, but, to do so validly, the rights being advanced by Congress must be within the purview of the Fourteenth Amendment. *See In re NVR L.P.,* 206 B.R. 831, 840 (Bankr.E.D.Va.1997), *aff'd,* 222 B.R. 514 (E.D.Va.1998).

■ Bankruptcy is not a privilege encompassed by the Fourteenth Amendment. *Elias,* 218 B.R. at 86; *Accord, Sacred Heart Hosp. v. Dep't of Pub. Welfare (In re Sacred Heart Hosp.),* 133 F.3d 237, 244–45 (3d Cir. 1998); *NVR,* 206 B.R. at 842. "The ability to use the bankruptcy laws as relief is simply a statutory benefit, not a Constitutional privilege or immunity." *Elias,* 218 B.R. at 86.

■ "The Privileges and Immunities Clause protects only those rights 'which owe their existence to the Federal government, its National character, its Constitution, or its

laws.'" *Elias,* 218 B.R. at 86 (quoting *In re Slaughter–House Cases,* 83 U.S. (16 Wall.) 36, 79, 21 L.Ed. 394 (1872)). The *Slaughter–House Cases* "removed from the purview of the Privileges and Immunities Clause any civil liberty traditionally associated with state protection." *NVR,* 206 B.R. at 842. As a result, the judiciary has essentially abandoned the privileges and immunities clause as a vehicle by which to guarantee enumerated rights under the Constitution, instead relying on the concept of substantive due process. *NVR,* 206 B.R. at 842. Perhaps most significantly, the Supreme Court has explicitly held that bankruptcy protection is not a fundamental Constitutional right. *NVR,* 206 B.R. at 842 (citing *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973)).

Additionally, courts have been reluctant to presume that Congress enacted § 106 under a general Fourteenth Amendment power when the Bankruptcy Clause of Article I explicitly authorizes the Code. *E.g., Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.),* 119 F.3d 1140 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998): "We will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law." 119 F.3d at 1146.

■■■■■ Bolstering the conclusion that § 106 was not enacted pursuant to the Fourteenth Amendment is the fact that there is no evidence to that effect in the legislative history of the Code. *NVR,* 206 B.R. at 840–41. On the other hand, the legislative history contains numerous references to the Bankruptcy Clause. *Id.; Accord, In re Fernandez,* 123 F.3d 241 (5th Cir.1997) *amended on denial of reh'g,* 130 F.3d 1138 (5th Cir. 1997): "[T]here is no indication that Congress passed the 1994 Act to remedy any incipient breaches or even some unarticulated, general violation of the rights specified in § 1 of the Fourteenth Amendment." 123 F.3d at 245. While an explicit statement that Congress is acting pursuant to the Fourteenth Amendment is not essential, "there

must be something about the act connecting it to recognized Fourteenth Amendment aims, specifically those concerned with discrimination by state actors on the basis of race or gender." *NVR,* 206 B.R. at 840 (citing *Wilson–Jones v. Caviness,* 99 F.3d 203, 209 (6th Cir.1996) *amended on denial of reh'g,* 107 F.3d 358 (6th Cir.1997)). Thus, Congress lacked the power to abrogate the states' sovereign immunity by enacting § 106. *Elias,* 218 B.R. at 86.

### D. *Enforcing the court's own order.*

Notwithstanding the foregoing, Lapin argues that this appeal can be decided on nonconstitutional grounds. He contends that the bankruptcy court imposed sanctions to enforce its own order, thus the Eleventh Amendment is not implicated because it is the court, not a private party, subjecting CFTB to sanctions. Here, Lapin argues, he did not subject CFTB to suit. Instead, he claims he merely brought CFTB's conduct to the court's attention, so that the court would enforce its own order.

Lapin cites *Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777 (4th Cir.1997), in which Maryland challenged the provisions of a confirmed plan exempting certain real property transfers from state and county taxes. On appeal, the state argued that the Eleventh Amendment barred the bankruptcy court from exercising jurisdiction over it in the confirmation proceeding. The Fourth Circuit disagreed:

The confirmation order in this case was not entered in a suit "against one of the United States" filed by a private party. The state was not named a defendant, nor was it served with process mandating that it appear in a federal court. While it was served with notice of the proposed plan and its confirmation, it was free to enter federal court voluntarily or to refrain from doing so. This is to be distinguished from the case in which a debtor, a trustee or other private person files an adversary action against the state in the bankruptcy court, causing the bankruptcy court to issue process summoning the state to appear. Such an adversary proceeding would be a suit "prosecuted against one of

the United States" and adjudication of that suit would depend on the court's jurisdiction over the state, implicating the Eleventh Amendment's limitation on federal judicial power.

While resolution of an adversary proceeding against a state depends on court jurisdiction over that state, the power of the bankruptcy court to enter an order confirming a plan ... derives not from jurisdiction over the state or other creditors, but rather from jurisdiction over debtors and their estates.

*Antonelli,* 123 F.3d at 786–87 (citation omitted). The Fourth Circuit affirmed the bankruptcy court's ruling that the state and county were bound by the terms of the confirmed plan and could not collaterally attack it in a subsequent proceeding.

Lapin argues that his motion for an order to show cause is analogous to the plan of reorganization in *Antonelli,* and the discharge order is analogous to the confirmation order in *Antonelli.* He contends that his motion did not require any response from CFTB, did not require its appearance in court, nor did it result in the bankruptcy court issuing process requiring CFTB to appear. The discharge order, Lapin further argues, did not derive from the court's jurisdiction over CFTB or other creditors, but from its jurisdiction over debtors and their estates, and its power to grant discharges.

The analogy between the confirmation order in *Antonelli* and the discharge order here is appropriate, in that both orders are binding on creditors and are not subject to collateral attack. However, CFTB does not contend that it is not bound by the terms of the discharge order. Rather CFTB contends that because of its sovereign immunity, the bankruptcy court did not have jurisdiction to sanction it for violating that order.

The problem with Lapin's analogy between a motion for an order to show cause and a plan of reorganization is that it fails to address the effect of the order to show cause. That order, which was issued at Lapin's behest, required CFTB to appear before the court or risk being found in contempt, analogous to the summons in an adversary proceeding. When a plan of reorganization is

submitted, creditors can choose to respond or appear or not, foregoing only the ability to contest the plan after confirmation if they do not. In contrast, the order to show cause in this case *required* CFTB to appear and explain why it should not be held in civil contempt.

Lapin's other argument, based on *Antonelli,* that the discharge order derived from the court's jurisdiction over the debtor and his estate, raises the question of whether the bankruptcy court would automatically have jurisdiction over the state in any subsequent proceeding to enforce that order. While there does not appear to be any authority directly on point, the case law does not support finding jurisdiction over a creditor properly claiming sovereign immunity, even when the violated order was within the court's jurisdiction.

For one thing, the idea that a bankruptcy court can bypass the sovereign immunity bar to monetary recovery by exercising in rem jurisdiction has been rejected. *French v. Georgia Dep't of Revenue (In re ABEPP Acquisition Corp.),* 215 B.R. 513, 516–17 (6th Cir. BAP 1997) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 38, 112 S.Ct. 1011, 1017, 117 L.Ed.2d 181 (1992)). Lapin cites no authority holding the bankruptcy court's jurisdiction over the debtor is enough to abrogate the sovereign immunity of a creditor. Such a rule would render sovereign immunity all but meaningless in bankruptcy cases.

The argument that it is the court, and not a private party, which forced CFTB to appear, thus the Eleventh Amendment is not implicated, has surface appeal. However, Lapin cites no authority supporting this assertion, nor does he give any reason why such a distinction should be made. No case law squarely addresses the propriety of such a distinction, but those sovereign immunity cases involving enforcement of a court's order use the same analysis as those in which a private party has brought a complaint against a governmental unit.

For example, in *Coleman v. Espy,* 986 F.2d 1184 (8th Cir.1993) *cert. denied,* 510 U.S. 913, 114 S.Ct. 301, 126 L.Ed.2d 249

(1993), the appellants petitioned the district court for contempt and compensatory relief against the United States for alleged violations of a court-imposed order. The district court dismissed the petition on mootness grounds. The Eighth Circuit affirmed the district court, but on the basis of sovereign immunity. The fact that the case involved violations of a court order did not impact the Eighth Circuit's analysis. Instead, their approach was to look for "an explicit, unequivocal waiver of sovereign immunity to proceed for an action alleging compensatory civil contempt of ... a judge-made order." *Coleman*, 986 F.2d at 1190. Finding no statutory waiver, the Eighth Circuit upheld the district court's dismissal of the contempt action because, absent an express waiver, sovereign immunity bars monetary awards for civil contempt against the United States. *Id.* at 1191–92. The fact that *Coleman* involved violations of a judge's order did not change the sovereign immunity analysis. *See also California State University v. Gustafson*, 934 F.2d 216, 217–18 (9th Cir.1991) (Pre–1994 version of § 106(c) did not abrogate California's Eleventh Amendment immunity from sanctions for violation of discharge injunction.).

▪ Lapin advances no substantive reason why, when the court imposes sanctions for violations of its own order, the Eleventh Amendment is not implicated. He asserts that, technically, it is not a private party imposing the sanctions. Lapin's argument ignores the fact that the court's discharge order arose out of a request for relief (the bankruptcy petition) made by Lapin, a private party. Enforcement of that order necessarily advances a private right. That the court issued the order to show cause (at Lapin's behest) does not change that private right into something else, nor does it provide a distinction from a suit against a state—judgments, as well as discharges, are entered by courts.

If a court cannot impose sanctions against a governmental unit for violations of its orders, how, Lapin asks, is the court to enforce them? According to Lapin, the logical result

is that state claims would be forever open to collection, notwithstanding a bankruptcy discharge, with the bankruptcy court having no weapon to prevent such abuse. This is not entirely true.

▪ Under the *Ex Parte Young* doctrine, a federal court may, consistent with the Eleventh Amendment, enjoin state officials to conform their future conduct to the requirements of federal law. "[P]ersons aggrieved by a state's continuing violation of [the bankruptcy code] may obtain injunctive relief under *Ex Parte Young* in order to remedy a state officer's ongoing violation of Federal law." *Schmitt v. Missouri Western State College (In re Schmitt)*, 220 B.R. 68, 72 (Bankr.W.D.Mo.1998) (citing *Seminole*, 116 S.Ct. at 1131 n. 16). While the *Ex Parte Young* doctrine does not allow for the relief being requested here—damages from the state for violations of the discharge order—it does empower the court to prohibit CFTB officials from continuing their collection efforts.[4]

▪ Where, as here, the state has already seized funds, the *Ex Parte Young* solution is hardly satisfactory from the debtor's standpoint—the doctrine allows only for prospective relief, precluding recovery of the seized funds. There is another alternative, however: suing the state in state court. *See generally,* S. Elizabeth Gibson, *Sovereign Immunity in Bankruptcy: The Next Chapter,* 70 Am.Bankr.L.J. 195, 203–208 (1996) (discussing state court litigation against states as a bankruptcy remedy still available after *Seminole* ). The Eleventh Amendment does not apply in state courts. *Hilton v. South Carolina Pub. Rys. Comm'n,* 502 U.S. 197, 205, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991). While bankruptcy courts' jurisdiction over "cases under title 11" is exclusive, their jurisdiction over "civil proceedings arising under title 11 or arising in or related to cases under title 11" is not. *See* 28 U .S.C. § 1334(a)–(b). Thus, state courts have concurrent jurisdiction over the latter. Furthermore, under the Supremacy Clause, state courts must exercise jurisdiction over federal

---

4. Lapin argued the *Ex Parte Young* doctrine in the bankruptcy court, and reserved the right to amend his motion to name CFTB officials, but apparently never did so.

claims. *See NVR*, 206 B.R. at 843 (citations omitted). "The Supremacy Clause makes [federal] laws 'the [S]upreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure." *Howlett v. Rose*, 496 U.S. 356, 367, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). *See also O'Brien v. Vermont Agency of Natural Resources*, 216 B.R. 731, 737 (Bankr.D.Vt.1998), on this point.

The Fifth Circuit has recently held that the Eleventh Amendment does not prevent the discharge in bankruptcy of a debt owed to a state and that the discharge can be raised as a defense against the state's enforcement efforts. *Texas v. Walker*, 142 F.3d 813, 823 (5th Cir.1998). Likewise, sovereign immunity does not preclude a debtor from initiating an action in state court to enforce a discharge injunction or to recover damages for a violation of that injunction.

## CONCLUSION

While the court's 31 December 1997 order did not explicitly impose sanctions against CFTB, that order is properly before the panel.

The bankruptcy court has the inherent power to impose contempt sanctions, even against non-parties. Nevertheless, the Eleventh Amendment bars the bankruptcy court from imposing sanctions against CFTB for violation of the discharge order. Congress' abrogation of sovereign immunity in § 106 was not pursuant to a valid grant of power under either the Bankruptcy Clause or Section 5 of the Fourteenth Amendment. Lapin's remedies are to seek prospective injunctive relief against state officials in federal court under *Ex Parte Young*, or to sue for damages in state court. We REVERSE.