**In re Randall Dee LAMBORN and Teresa Marie Lamborn, Debtors.**

**Randall Dee LAMBORN and Teresa Marie Lamborn, Plaintiffs,**

**v.**

**The UNITED STATES of America ex rel. INTERNAL REVENUE SERVICE; State of Oklahoma ex rel. Oklahoma Tax Commission, Defendants.**

Bankruptcy No. 93–02338–W.
Adv. No. 93–0251–W.

United States Bankruptcy Court, N.D. Oklahoma.

April 26, 1995.

---

**33.** Notice of Intended Sale, Exhibit No. 11 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992, at 9–10.

John M. Hickey, Tulsa, OK, for plaintiffs.

Craig S. Key, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, OK, for defendants.

## MEMORANDUM OPINION AND ORDER

MICKEY DAN WILSON, Chief Judge.

This adversary proceeding under 11 U.S.C. § 523(a)(1) was submitted for decision on stipulations and briefs. Upon consideration thereof, and of the record herein, this Court, pursuant to F.R.B.P. 7052, finds, concludes, and orders as follows. Procedural history of the matter is set forth in "Findings of Fact."

### FINDINGS OF FACT

Randall Dee Lamborn and Teresa Marie Lamborn are husband and wife ("the Lamborns"). The Lamborns timely filed their Oklahoma Individual Form 511 Income Tax Returns for the years 1981 and 1982, stips. p. 2 ¶ 3. For purposes of this opinion, this Court finds that these returns were due no later than April 15, 1982 and April 15, 1983, Lamborns' brief p. 8. These returns were based on the Lamborns' Federal income tax returns for those years; and the Oklahoma income taxes paid by the Lamborns were calculated accordingly.

Ten years later, the United States Internal Revenue Service ("IRS") conducted an audit of the Lamborns' Federal income tax returns for the years 1981 and 1982. The results of the audit were stated in a Revenue Agents Report ("the IRS report") issued May 15, 1992, stips. p. 2 ¶ 4. The IRS report disallowed the Lamborns' claimed deductions from gross income related to alleged forward contracts involving government securities, *id.*

As a result, the Lamborns' taxable income for the years 1981–1982 was revised upward; and so was their tax debt owed to the United States for those years. As the Lamborns' tax debt to the United States increased, so did their tax debt to the State of Oklahoma.

On June 29, 1992, the Lamborns filed Oklahoma Amended Individual Income Tax Returns ("the amended returns") for the years 1981–1982. The amended returns reflected the increase in Federal adjusted gross income as indicated by the IRS report. According to the amended returns, the Lamborns owed the State of Oklahoma $5,390.00 in tax, plus penalty and interest, for the year 1981; and $414.00 in tax, plus penalty and interest, for the year 1982. See stips. p. 2 ¶ 5.

The Oklahoma Tax Commission ("OTC") never sent the Lamborns any proposed assessment for the tax years 1981–1982, stips. p. 6 ¶ 14.

On September 3, 1992, OTC "processed" the Lamborns' amended return for the year 1981, stips. p. 6 ¶ 14. On the same day, OTC sent the Lamborns a collection letter, demanding payment of taxes in the amount stated in the Lamborns' amended return for the year 1981, stips. p. 3 ¶ 6. On September 24, 1992, OTC "processed and reviewed" the Lamborns' amended return for the year 1982, stips. p. 6 ¶ 14. On the same day, OTC sent the Lamborns a collection letter, demanding payment taxes in the amount stated in the Lamborns' amended return for the year 1982, stips. p. 3 ¶ 8. On October 19, OTC sent a second collection letter for the 1981 taxes, stips. p. 3 ¶ 6. On November 9, 1992, OTC sent a second collection letter for the 1982 taxes, stips. p. 4 ¶ 9. On December 3, 1992, OTC sent a third collection letter for the 1981 taxes, stips. p. 3 ¶ 7. On this occasion, OTC further notified the Lamborns that "[f]ailure to satisfy this liability within fifteen (15) days of the date of this notice, may result in the issuance of a tax warrant to the county sheriff," stips. p. 3 ¶ 7. On December 28, 1992, OTC sent a third collection letter for the 1982 taxes, stips. p. 4 ¶ 10. On this occasion, OTC further notified the Lamborns that "[f]ailure to satisfy this liability within fifteen (15) days of the date of this notice,

may result in the issuance of a tax warrant to the county sheriff," stips. p. 4 ¶ 10.

On February 1, 1993, OTC issued Tax Warrant ITI 93003228–00 ("the first tax warrant") for taxes due for the years 1981–1982. The principal amount of the tax due, as shown on this warrant, is $5,804.00, which is the sum of $5,390.00 as reported in the Lamborns' amended return for 1981 plus $414.00 as reported in the Lamborns' amended return for 1982. This warrant also showed interest to date of $9,797.31. The first tax warrant was filed in the Tulsa County Land Records on February 11, 1993, and recorded in Book 5476 at Page 1522. See stips. pp. 4–5 ¶ 11.

On March 24, 1993, OTC sent the Lamborns a letter "Re: Delinquent 1981 and 1982 Income Taxes." This letter advised the Lamborns that their "income tax delinquency has been referred to the General Counsel's Office for legal action," and that they "must make arrangements to pay this outstanding income tax liability by April 5, 1993" or OTC would "file a garnishment action against [them] without further notice." See stips. p. 5 ¶ 12.

On April 13, 1993, OTC issued Tax Warrant ITI 93008941–00 ("the second tax warrant") to correct a typographical error in the first tax warrant. The second tax warrant did not correct or change the total tax due. This warrant was filed in the Tulsa County Land Records on April 19, 1993 and recorded in Book 5494 at Page 124. See stips. p. 5 ¶ 13.

On July 15, 1993, the Lamborns filed their voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court, stips. P. 1 ¶ 1.

In response to the Lamborns' filing in bankruptcy, on August 24, 1993 OTC filed its Proof of Claim in this case. OTC offered proof of a secured claim in the amount of $15,992.48 for taxes for the years 1981–1982 plus penalties and interest. The Lamborns did not object to this claim. See stips. p. 2 ¶ 2. But the next day, August 25, 1993, the Lamborns filed their complaint commencing this adversary proceeding against IRS and OTC, seeking a determination that their tax debts are dischargeable.

The Lamborns have settled with IRS, but not with OTC. At pre-trial conference on February 16, 1994, it was determined that the matter would be submitted for decision on stipulations and briefs. On May 9, 1994, the Lamborns and OTC filed their joint "Stipulation of Facts." From May 23, 1994 through September 2, 1994, the parties filed briefs, responses, replies, and supplements thereto. Thereafter, the matter was taken under advisement.

### CONCLUSIONS OF LAW

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), 11 U.S.C. § 523(a)(1).

11 U.S.C. § 523(a)(1)(A), as effective in cases filed before October 22, 1994, excepts from discharge "any debt ... for a tax or customs duty ... of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title ..." § 507(a)(2) and (a)(7)(B), (C) are concededly inapplicable here. That leaves § 507(a)(7)(A).

§ 507(a)(7)(A) grants priority status to "a tax on or measured by income ...

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]"

The question before this Court is whether the taxes owed by debtor herein fit within any of these categories.

As a rule, taxing agencies determine what taxes are owed on the basis of either a return by the taxpayer, or the agency's own assessment. § 507(a)(7)(A)'s deadlines are based on the occurrence of one or the other of these alternative "tax triggers."

Under § 507(a)(7)(A)(i), priority status is granted to pre-petition income tax whose return, "if required," was due within three years before the filing of the petition in bankruptcy. The Lamborns' *original* returns were last due on April 15, 1982 and April 15, 1983, more than ten years before the filing of their petition in bankruptcy. The Lamborns propose that "[c]onsequently, section 507(a)(7)(A)[i] is inapplicable," Lamborns' brief p. 8. OTC responds that the three-year period of § 507(a)(7)(A)(i) should be counted from the date on which the *amended* returns were last due. OTC points out that 68 O.S. § 2375(H)(2) "requires the filing of an amended return or the notification of [OTC] in writing within one year of the IRS changes," OTC's reply brief p. 5; and that the Lamborns filed amended returns on June 29, 1992, just over one year before the filing of the petition in bankruptcy. OTC argues that "when the [Lamborns] filed their Oklahoma amended tax returns ... on June 29, 1992, they were filing required returns within the meaning of [11 U.S.C.] § 507(a)(7)(A)(i)," *id.* p. 5. The Lamborns reply that § 507(a)(7)(A)(i) applies to a "required" return; that 68 O.S. § 2375(H)(2) offers taxpayers a choice of either filing an amended return or notifying OTC in writing; that under this Oklahoma statute a return is not "required," since it can be dispensed with in favor of a mere written notification; and that accordingly § 507(a)(7)(A)(i) does not apply to the Lamborns' debt to OTC. The Lamborns themselves filed formal returns, not mere informal written notifications. They point to the option of written notification, not because they used this option themselves, but only as an indication that a return is not "required."

One way to put the question is whether the words "if required" reflect Congressional intent to give favored treatment to those tax systems which do not allow debtors any options besides filing formal tax returns—or, conversely, whether the words "if required" reflect Congressional intent to inflict disfavored treatment on those tax systems which allow debtors the option of submitting "informal returns" such as written notification. Another way to put the question is whether the word "return" should be construed strictly and narrowly, to mean a formal tax return and nothing else, or liberally and broadly, to include not only formal tax returns but effective substitutes therefor which may be permitted by some tax systems, e.g. the Oklahoma system pursuant to 68 O.S. § 2375(H)(2).

There is no indication that Congress, in enacting § 507(a)(7)(A)(i), ever considered such a peculiar animal as a tax return replaceable at the taxpayer's option with a written notification. There is no indication that Congress, in enacting § 507(a)(7)(A)(i), entertained any purpose or intent to use this statute to punish States which allow debtors the option of reporting revised tax debts by informal written notice instead of by formal return. Indeed, this Court cannot discern any rational purpose which could be served by making priority status and (non)dischargeability depend on the choice of formal or informal tax return. It is especially hard to fathom any such purpose or policy when (as in Oklahoma) the tax debtor himself may choose what kind of return to make, and so (according to the Lamborns) could effectively choose whether his tax debts should survive bankruptcy or not. These difficulties are avoided if the Federal statute is read to recognize as "a return" whatever the State treats as a return, including functional equivalents such as the letter permitted by 68 O.S. § 2375(H)(2). If this requires a relatively broad and "liberal" construction of the term "return" in favor of the tax creditor, so be it. Exceptions to discharge need not be construed in favor of the debtor regardless of all other considerations, *In re Manley,* 135 B.R. 137, 147 (Bkrtcy., N.D.Okl.1992); *In re Turner,* 134 B.R. 646, 659 (Bkrtcy., N.D.Okl. 1991). The collection of revenue can override the policy of affording debtors a "fresh start," *In re DePaolo,* 45 F.3d 373 (10th Cir.1995), *In re Grynberg,* 986 F.2d 367, 371 (10th Cir.1993).

For these reasons, this Court concludes that § 507(a)(7)(A)(i)'s mention of "a return" should be construed with sufficient liberality and breadth as to include not only formal tax returns but effective substitutes therefor which may be permitted under State

laws, such as submission of a letter pursuant to 68 O.S. § 2375(H)(2).

■ It is clear that 68 O.S. § 2375(H)(2) *requires* debtors to submit to OTC either a formal amended return or a letter acting as a substitute therefor. Therefore a "return," loosely defined, is "required" for purposes of § 507(a)(7)(A)(i). Therefore § 507(a)(7)(A)(i) does apply here. Since the Lamborns' amended returns were filed within three years before the filing of bankruptcy, § 507(a)(7)(A)(i) does give the tax debt thereby reported priority status. Therefore § 523(a)(1) applies also, and does except this tax debt from discharge.

Under § 507(a)(7)(A)(ii), priority status is granted to pre-petition income tax "assessed" within 8 months before the filing of the petition in bankruptcy, not counting specified extensions (which are not in issue here). The Lamborns propose that the additional taxes for 1981 were "assessed" at the earliest on June 29, 1992 (the date the Lamborns filed their amended returns), and at the latest on September 3, 1992 with respect to taxes for 1981 (the date OTC sent the Lamborns a collection letter for 1981 taxes in the amount stated in the amended return), and on September 24, 1992 with respect to taxes for 1982 (the date OTC sent the Lamborns a collection letter for 1982 taxes in the amount stated in the amended return). All of these dates are more than 8 months before the filing of the petition in bankruptcy. OTC states that it has never sent the Lamborns a "proposed assessment," therefore the taxes have not yet been "assessed."

Both parties agree that there is no express formal definition of the term "assessment" in the Oklahoma Tax Code.

The Lamborns argue that the Court should adopt the definition found in the Internal Revenue Code ("IRC").

Assessment under the IRC is defined as the formal recording of a taxpayer's liabilities on the books of the [IRS]. The IRS assesses the taxes reported on a tax return, **immediately upon the filing of the return.** In essence, the taxpayer, upon the filing of the return, assesses the taxes against himself. **26 U.S.C. §§ 6201 and 6203; Federal Tax Coordinator 2d, T–3600, page 50,249 (Aug. 1992).** In this manner the IRS assesses the tax as soon as the taxpayer files the return. Once the taxes have been assessed, the IRS, from the information it has in its records, will commence collection proceedings if the taxpayer has failed to remit the tax. This method of self assessment provides an efficient and economical way to collect revenue from the public,

debtors' brief p. 12 (emphasis original). OTC responds that

. . . counsel for the [Lamborns] has misstated the IRS assessment procedure. A taxpayer does not assess his own taxes . . . The date of assessment for IRS purposes is the date the summary record is signed by an assessment officer. Treas.Reg. § 301.6203–1. Although the amount of tax shown on a return will often be assessed on or shortly after the date the return is filed, this is not always true, particularly in the case of taxes shown on amended returns. See *In re Crose*, 1988 Bankr. LEXIS 2472 (Bankr.N.D.Cal.1988),

OTC's brief p. 3. OTC also points out that "The applicable law in the instant case is 68 O.S. § 2375(H)(2), not the Internal Revenue Code," *id.*

■ OTC is correct. "The formal recording of a taxpayer's liabilities upon the books" is not complete until the record, even if based on a tax debtor's own return, is signed by an assessment officer. In any event, IRC definitions and IRS procedures are inapplicable to a State tax code which may broadly resemble but neither copies nor adopts the IRC. In attempting to fit one (Federal) statutory definition into another and different (State) statutory context, the Lamborns commit a legal and logical error which has been called "the fallacy of the transplanted category," see Hancock, "Fallacy of the Transplanted Category," 37 Can. B.Rev. 535 (Dec.1959).

■ The Lamborns further argue that "[i]f the Lamborn's [sic] taxes have not been determined or assessed, where did the OTC come up with the figures that are contained in the various demand notices and tax war-

rants sent to or filed against the Lamborns," debtors' brief p. 13. OTC responds to the effect that an attempt to collect a tax in an amount *admitted* to be owed does not mean that a taxing agency agrees that the admitted amount is *all* that may be owing. "According to the knowledge and belief of [OTC's] counsel, no federal or state court has ever ruled Oklahoma income taxes are assessed upon the filing of an income tax return with an admitted liability," OTC's brief p. 3. The Lamborns point out that OTC's argument herein is inconsistent with its argument made in another case pending in the Bankruptcy Court for the Eastern District of Oklahoma, wherein OTC "insisted that '. . . **the Debtors made a self-assessment of taxes**' within [8 months] of filing their petition in bankruptcy **by the late filing of the tax returns** in question . . .," debtors' brief p. 14. The Lamborns complain that OTC "take[s] whatever position suits it to fit the particular situation," debtors' brief p. 14. The Court finds this inconsistency interesting; but the fact that OTC is inconsistent does not prove *which* of OTC's inconsistent positions is the correct one. It appears to this Court that "assessment" requires a taxing agency to determine how much it thinks a taxpayer owes; that a taxpayer's admission that he owes *some* taxes may justify efforts to collect *those* amounts, without any determination as to whether additional amounts may also be owing; and that, consequently, OTC's letters and warrants seeking to collect the taxes stated to be due in the Lamborns' own amended returns need not constitute an "assessment." Having so ruled, this Court will hereafter hold OTC to such ruling.

■ OTC argues that "while the [Oklahoma] statutes contain no formal definition of 'assessment,' they do require a specific official act before an assessment occurs," OTC's reply brief p. 4. This is indicated by the text of 68 O.S. § 2375(H)(2) itself, which provides that

> If the amount of the net income for any year of the taxpayer under this law, and as returned to the United States Treasury Department, is changed or corrected by the Internal Revenue Service, such taxpayer, within one (1) year after final determi-

nation of the correct net income, shall file an amended return reporting the corrected net income, or notify the Tax Commission by letter that the information is available, and **the Tax Commission shall make assessment or refund based thereon within two (2) years from the date the return or notice required by this section is filed** and not thereafter, unless a waiver is agreed to and signed by the Tax Commission and the taxpayer,

OTC's brief p. 4 (emphasis original in brief), indicating that the "fil[ing] of an amended return" is different from and happens before "assessment;" and by the text of 68 O.S. § 221(a), which provides that the OTC

> . . . shall in writing propose the assessment of taxes or additional taxes, as the case may be, and shall mail a copy of the proposed assessment to the taxpayer at his last-known address,

OTC's brief p. 4, indicating an affirmative act on the part of OTC. The Lamborns respond that 68 O.S. § 221 "deals primarily with taxpayers who have either failed to file a return at all or who have under[-]reported the taxes that they owe the State of Oklahoma for any particular tax year," debtors' response p. 2. It appears to this Court that 68 O.S. § 2375(H)(2) clearly indicates that the filing of an amended return and the making of an assessment are two different things. The former is the taxpayer's action; the latter must be the OTC's action. Therefore "a[n] . . . official act" is indeed required to constitute an "assessment." It is not clear what such "official act" may be; but whatever it is, it must indicate that OTC has determined how much it thinks the taxpayer owes—not only how much the taxpayer owes *at minimum* (as admitted by the taxpayer), but also how much the taxpayer owes *at maximum* (as determined by the taxing authority). OTC may later change its mind, as the statute contemplates when it mentions a "proposed assessment"; but before OTC can change its mind it must have something in mind which needs changing. What OTC has in mind *may* be the exact amount stated in the taxpayer's own return or amended return. OTC may adopt the taxpayer's return or amended return if it so chooses; but there

must be something to indicate that OTC has made such a choice.

 Since OTC made no assessment, the applicable provision is not § 507(a)(7)(A)(ii) but § 507(a)(7)(A)(iii). Under this subparagraph, priority status is granted to pre-petition income tax "not assessed before, but assessable, under applicable law ..., after," the filing of the petition in bankruptcy. Nothing in the record or in the Lamborns' argument indicates that the State income tax in question here is no longer "assessable." Consequently, § 507(a)(7)(A)(iii) does give the tax herein priority status, and accordingly § 523(a)(1) does except such tax debt from discharge.

The Court concludes that the State taxes herein are granted priority status under 11 U.S.C. § 507(a)(7)(A)(i), (iii), and consequently are excepted from discharge under 11 U.S.C. § 523(a)(1). Judgment shall issue accordingly. OTC shall prepare and submit an appropriate form of judgment.

AND IT IS SO ORDERED.