In re Marion Dale JACKSON and
Patricia L. Jackson, Debtors.

CALIFORNIA FRANCHISE TAX
BOARD, Appellant,

v.

Marion Dale JACKSON and Patricia
L. Jackson, Appellees.

No. CV 98–0189 ABC.
Bankruptcy No. SA 96–22790–JR.

United States District Court,
C.D. California.

May 1, 1998.

Gregory S. Price, San Diego, CA, for
Plaintiff/Petitioner/Appellant.

James A. Hayes, Ashworth, Hayes & Moran, Laguna Niguel, CA, for Defendant/Respondent/Appellee.

COLLINS, District Judge.

Appellant CALIFORNIA FRANCHISE TAX BOARD ("FTB") appeals from the Bankruptcy Court's Order denying its general unsecured claim for state income taxes in the Chapter 13 Bankruptcy case of MARION DALE JACKSON and PATRICIA L. JACK-

SON ("Debtors"). After reviewing the materials submitted by the parties, the Court AFFIRMS the Bankruptcy Court's Order.

## I. Factual and Procedural Background

The undisputed facts in this case are as follows:

Debtors filed joint income tax returns with both the Internal Revenue Service ("IRS") and the FTB for tax years 1982, 1983, and 1989. ER at 9. In 1990 and 1991, Debtors' federal income taxes for these three years were increased. ER at 3–4.

The IRS notified the FTB of the audit changes to Debtors' federal taxes. The FTB increased Debtors' state income taxes based on the IRS' audit changes. ER at 9. The Debtors did not notify the FTB or file amended state or federal tax returns. ER at 9.

On April 1, 1996, Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. After the Debtors voluntarily converted their case to Chapter 7, their discharge was entered on October 16, 1996. ER at 9. The Debtors scheduled the FTB as a creditor in the bankruptcy case based on the taxes owed for the 1982, 1983, 1989, and 1991 tax years.

On October 28, 1996, Debtors filed a new joint Chapter 13 case. The Bankruptcy Court confirmed their Chapter 13 Plan on December 17, 1996. ER at 10. On or about December 31, 1996, FTB filed a Proof of Claim in Debtors' Chapter 13 case. FTB made a priority unsecured claim for $471.24 for interest and penalties for tax years 1995 and 1996. FTB also made a general unsecured claim for $59,360.95 for taxes, interest, and penalties for tax years 1982, 1983, and 1989 based on the IRS' reassessment of those tax years. ER at 4.

Debtors filed an objection to the FTB's claim on October 27, 1997. ER at 1. On December 10, 1997, the Bankruptcy Court held a hearing on the Debtors' objection. ER at 92. On December 23, 1997 the Bankruptcy Court signed an Order sustaining the Debtors' objection and disallowing the unsecured claim. ER at 85.

On December 31, 1997, FTB timely filed its Notice of Appeal of the Bankruptcy Court's Order. On March 26, 1998, FTB filed its Opening Brief. Debtors filed their Answering Brief on April 9, 1998, and FTB filed its Reply Brief on April 20, 1998.

## II. Standard of Review

■ The instant appeal involves a question of law. This Court reviews a bankruptcy court's conclusions of law de novo. *In re Devers,* 759 F.2d 751, 753 (9th Cir.1985).

## III. Jurisdiction

The FTB has appealed the Bankruptcy Court's Order Sustaining Debtors' Objection to Claim of Franchise Tax Board. The parties do not dispute that the Bankruptcy Court's Order constitutes a final judgment. Thus, this Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1). Section 158(a)(1) provides: "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees." 28 U.S.C. § 158(a)(1).

## IV. Discussion

■ The sole issue in this appeal is whether the Debtors' *failure to notify* the FTB of the IRS' reassessment constitutes a *failure to file a tax return* and thus excepts the state taxes from discharge under 11 U.S.C. § 523(a)(1)(B)(i). The Bankruptcy Appellate Panel for the Ninth Circuit has twice addressed this identical question. In each instance, the Court unequivocally held that "the failure to file a report is not the same as a failure to file a required tax return" within the meaning of the Bankruptcy Code's exception to discharge provision— § 523(a)(1)(B)(i). *In re Jerauld,* 208 B.R. 183 (9th Cir. BAP 1997), *appeal docketed,* No. 97–55872 (9th Cir.1997); *In re Rowley,* 208 B.R. 942, 944 (9th Cir. BAP 1997) ("We fully agree with the reasoning and holding in *Jerauld....* ") (per curiam).[1] Because the Debtors' failure to notify the FTB does not constitute the failure to file a return, the

---

1. The *Rowley* Court did not, however, base its holding on an independent analysis of the issue. Rather, that Court's decision was "dictated by the principle that we are bound by prior [Bankruptcy Appellate] Panel decisions." *Rowley,* 208 B.R. at 944.

Court AFFIRMS the Bankruptcy Court's Order.

Bankruptcy Code § 523(a)(1) contains specific exceptions to the general rule in 11 U.S.C. § 727(b) that a Chapter 7 bankruptcy case discharges all of a debtor's debts.[2] Section 523 expressly provides that a debtor is not discharged from a tax debt where a return, if required, was not filed. In this case, for Debtors' state taxes to be found nondischargeable, the FTB must show that Debtors did not file a required return. *See* 11 U.S.C. § 523(a)(1)(B)(i).

Under former California Revenue and Tax Code § 18451, the taxpayer bears the burden of reporting any changes or corrections from his federal tax return to the FTB.[3] *See Vitaliano v. Franchise Tax Board (In re Vitaliano)*, 178 B.R. 205, 207 (9th Cir. BAP 1995). In this case, it is undisputed that Debtors failed to comply with this reporting requirement. ER at 4.

FTB's sole contention on appeal is that the "report" required to be filed under former § 18451 constitutes a "return" under Bankruptcy Code § 532. App. Op. Brief at 6–7. Thus, FTB contends that Debtors' failure to file a report under California Revenue & Tax Code § 18451 is the equivalent of failing to file a required return under § 523(a)(1)(B)(i), rendering the state tax nondischargeable. In support of its contention, the FTB relies

on *Blutter v. United States Dep't of I.R.S. (In re Blutter)*, 177 B.R. 209, 210 (Bankr. S.D.N.Y.1995) and *Lamborn v. Oklahoma Tax Comm'n*, 181 B.R. 98 (Bankr.N.D.Okla. 1995).

The *Blutter* Court considered a New York statute which provided that the debtor shall report a change in federal tax to the state. That court found the state tax claim nondischargeable, because the debtor's failure to comply with New York's reporting requirement was the equivalent of failing to file a required return under § 523(a)(1)(B)(i). *Id.* at 212. The *Blutter* court considered § 523's plain meaning and the underlying policy considerations. The court stated that "the notion that a debtor should not be rewarded with a discharge for failing to comply with his filing obligations ... applies regardless of whether a document is labeled a 'return' or a 'report.'" *Id.* at 211.

In *Lamborn*, the court considered "whether the word 'return' should be construed strictly and narrowly, to mean a formal tax return and nothing else, or liberally and broadly, to include not only formal tax returns but effective substitutes...." *Id.* at 102. The court held that it could not "discern any rational purpose which could be served by making priority status and (non)dischargeability depend on the choice of formal or informal tax return." *Id.*[4]

**2.** Section 523(a)(1) states, in part:

"A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
    (1) for a tax or a customs duty—

        .      .      .

    (B) *with respect to which a return, if required—*
        (i) *was not filed; ....*"
11 U.S.C. § 523(a)(1)(B)(i) (emphases added).

**3.** Former § 18451 provided, in part:

If the amount of gross income or deductions for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the [IRS] ... such taxpayer shall report such change or correction ... within 90 days after the final determination of such change or correction ... or as required by the [FTB], and shall concede the accuracy of such determination or state wherein it is erroneous. Such changes or corrections need not be reported unless they affect the amount

of tax payable under this part. Any taxpayer filing an amended return with such department shall also file within 90 days thereafter an amended return with the [FTB] which shall contain such information as it shall require. Cal. Rev. & Tax Code § 18451.

Effective January 1, 1994, § 18451 was repealed and replaced by California Revenue & Tax Code § 18622. The parties do not dispute, however, that the former provision applies to the instant case because the IRS assessment at issue arose before § 18451 was repealed.

**4.** *Lamborn* is of limited guidance to the instant case because the underlying state statute in that case differs from former § 18451. In *Lamborn*, the court considered an Oklahoma statute which required the filing of *either* an amended return or a "notification" in the event of a federal tax change. *Id.* at 102. Former § 18451, however, only requires the filing of an amended return in certain circumstances. Moreover, the Debtors in *Lamborn* actually filed tax returns. In this case, the Debtors filed neither a report or a tax return.

686

The *Jerauld* court expressly rejected the *Blutter* court's holding and stated:

> Nothing in the legislative history or the case law supports the *Blutter* court's view that '[w]hether the information is imparted to the state via an amended return or a report should not make any difference as to the dischargeability of the tax obligation because in each instance the debtor has failed to file information with the state which would alert it to the debtor's under-payment of tax.' With all due respect to the *Blutter* court, the difference is that *in the case of a debtor's failure to file an amended tax return, Congress specifically carved out an exception to discharge.* '[E]xceptions to dischargeability should be strictly construed in order to serve the . . . [Code's] purpose of giving debtors a fresh start.'

*Jerauld*, 208 B.R. at 189 (emphasis added) (citations omitted).

■ The parties agree that to determine whether a "report" is a "return" for purposes of Bankruptcy Code § 523, the Court must consider the statute's plain meaning. *See* App. Op. Brief at 7–12; Opposition at 9–12. "California law provides that when a statute is unambiguous on its face, we must take the statute as we find it and not try to embark on a journey to discover legislative intent." *Jerauld*, 208 B.R. at 188 (citations omitted). To determine a statute's meaning, the Court must "first consult the words themselves, giving them their usual and ordinary mean-ing." *Smith v. Fair Employment & Hous. Comm'n*, 12 Cal.4th 1143, 51 Cal.Rptr.2d 700, 705, 913 P.2d 909, 914–15 (1996). "Accord-ingly, when the language of the statute is clear and unambiguous, there is no need for construction." *Jerauld*, 208 B.R. at 188 (cit-ing *DaFonte v. Up–Right Inc.*, 2 Cal.4th 593, 7 Cal.Rptr.2d 238, 242–43, 828 P.2d 140, 144–45 (1992)).

The plain meaning of former § 18451 un-equivocally indicates that under California law a taxpayer need not file an amended return unless the taxpayer filed an amended return with the IRS. *See* Cal. Rev. & Tax Code § 18451; *see also Jerauld*, 208 B.R. at 188 ("Because California did not require the

filing of an amended return under former CRTC § 18451 unless the same was filed with the IRS, Debtor did not have to file an amended return to notify the FTB of the Reassessment."). The California legislature did not use the terms "report" and "return" interchangeably. Rather, the term "report" relates to the taxpayer's duty to notify the FTB "[i]f the amount of gross income or deductions for any year of any taxpayer as returned to the United States Treasury De-partment is changed or corrected by the [IRS]. . . ." Cal. Rev. & Tax Code § 18451. In contrast, the California legislature used the term "return" to indicate that a taxpayer shall file an amended return only if the tax-payer files an amended return with the IRS. *Id.*

■ With respect to § 523(a)(1)(B)(i), that provision's plain language indicates that a tax debt is not discharged in bankruptcy if a required return was not filed. 11 U.S.C. § 523(a)(1)(B)(i). "The language used to de-scribe the exception is clear and unambigu-ous. Where the statutory language is plain, the inquiry ends and the sole function of the court is to enforce the statute according to its terms." *Jerauld*, 208 B.R. at 188 (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ron Pair*, 489 U.S. at 242, 109 S.Ct. at 1031 (citation omitted). As the *Jerauld* Court not-ed: "The plain meaning of the word 'return' should be conclusive, as it has a very specific meaning in the world of taxation. Certainly, taxpayers know what it means to have to file a tax return; they do it each year." *Jerauld*, 208 B.R. at 188; *see also Dyer v. Georgia Dep't of Revenue (In re Dyer)*, 158 B.R. 904, 906 (Bankr.W.D.N.Y.1993) ("[Construing § 523(a)(1)(B)(i) liberally in favor of the debt-or] commands that dischargeable taxes are not converted into non-dischargeable taxes by a State's 'requiring' successive returns . . . addressing the same basic information,

or by a State's labeling all 'amendments' or 'notifications' as 'returns.'"); *Blackwell v. Virginia Dep't of Taxation (In re Blackwell)*, 115 B.R. 86, 89 (Bankr.W.D.Va.1990) (holding that the statutory requirement to file a report regarding a federal tax change was not the same as a requirement to file an amended return).

■ The legislative history of § 523(a)(1)(B)(i) also establishes that the word "return" means a tax return required by taxing authorities for taxpayers to set forth their tax liabilities.[5] Thus, as stated in *Jerauld*, "restricting § 523(a)(1)(B)(i) to its plain meaning is consistent and not demonstrably at odds with Congressional intent." *Jerauld*, 208 B.R. at 188.

For all these reasons, the Court finds that Debtors' failure to file a report does not constitute a return within the meaning of § 532. Thus, Debtors' state tax debt was discharged in the bankruptcy.

### V. Conclusion

For all these reasons, the Court hereby AFFIRMS the Bankruptcy Court's Order Sustaining Debtors' Objection to the Claim of the Franchise Tax Board.

**SO ORDERED.**

---

5. "The House amendment retains the basic categories of nondischargeable tax liabilities contained in both bills, but restricts the time limits on certain nondischargeable taxes. Under the amendment, nondischargeable taxes cover taxes entitled to priority under Section 507(a)(6) of Title 11 and, in the case of individual debtors under chapters 7, 11, 13, tax liabilities with respect to which no required return has been filed or as to which a late return had been filed if the return became last due, including extensions, within 2 years before the date of the petition or became due after the petition, or as to which the debtor made a fraudulent return, entry or invoice or fraudulently attempted to evade or defeat the tax." 124 Cong. Rec. H11, 113–114 (Sep. 28, 1978); S. 17,430–1 (Oct. 6, 1978) (quoted in *Jerauld*, 208 B.R. at 188 n. 12).