**In re Ronald NEETER, Debtor.**

**Ronald Neeter, Plaintiff,**

v.

**Director of Revenue, State of Missouri and Missouri Department of Revenue, Defendants.**

**Bankruptcy No. 99–51645–293. Adversary No. 00–4227–293.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

June 6, 2001.

Harry Charles, St. Louis, MO, for Plaintiff/Debtor.

Shelly L. Forrest, Missouri Department of Revenue, General Counsel's Office, Jefferson City, MO, for Defendants.

Leslie A. Davis, Sandberg, Phoenix & Von Gontard, P.C., St. Louis, MO, trustee.

### *MEMORANDUM OPINION*

DAVID P. McDONALD, Bankruptcy Judge.

Plaintiff Ronald Neeter seeks a declaration that his Missouri income taxes for certain years were discharged in his bankruptcy proceedings. Defendants contend that these taxes were not discharged because they were entitled to priority under 11 U.S.C. § 507(a)(8). Plaintiff's taxes are nondischargeable because they are entitled to priority and are, therefore, excepted from discharge under 11 U.S.C. § 523(a)(1).

### *JURISDICTION AND VENUE*

This Court has jurisdiction over the parties and subject matter of this proceeding

under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

On November 2, 1999, Debtor Ronald Neeter filed a voluntary petition seeking relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330. An order discharging Debtor was entered on February 15, 2000, and the case was closed on March 1, 2000. Debtor filed the present Complaint on October 18, 2000, seeking an order discharging his Missouri income taxes for tax years 1992, 1993, and 1994. On October 24, 2000, the Court granted Debtor's motion to reopen his case to determine the dischargeability of that tax debt.

The facts of the case are not in dispute. On April 23, 2001, the parties consented to have this matter determined based on the pleadings, exhibits, and stipulated facts which have been filed in the case. The question before the Court is whether Debtor's taxes are excepted from discharge under 11 U.S.C. § 523(a)(1)(A) and § 507(a)(8).

## FINDINGS OF FACT

The parties have submitted the following joint stipulation of uncontested facts which the Court now adopts:

1. Debtor Ronald Neeter ("Neeter") timely filed Missouri income tax returns for tax periods 1992, 1993, and 1994 showing refunds on each.

2. Neeter had a dispute about his federal taxes for those years which was re-solved by a decision of the United States Tax Court.

3. Under R.S.Mo. § 143.601, Neeter was required to file amended returns with Defendant Missouri Department of Revenue ("MDOR") within ninety days of the decision of the United States Tax Court.

4. On October 29, 1998, Neeter timely filed amended Missouri income tax returns for tax years 1992, 1993, and 1994 based on the decision of the United States Tax Court.

5. Defendant MDOR issued Notices of Deficiency for tax periods 1993 and 1994 on January 12, 1999, and a Notice of Deficiency for tax period 1992 on January 26, 1999.

6. Neeter filed a voluntary petition for bankruptcy seeking relief under Chapter 7 of the Bankruptcy Code on November 2, 1999.[1]

7. Neeter listed MDOR as a creditor in his bankruptcy schedules.

8. On February 4, 2000, the United States Internal Revenue Service ("IRS") sent Neeter a letter stating that his federal tax liabilities for tax years 1992, 1993, and 1994 were discharged due to the bankruptcy discharge, and that upon notification of the discharge, they would be abated.

9. On February 15, 2000, the Court entered an order discharging Neeter's debts.

## DISCUSSION

Debtor Neeter seeks a ruling from this Court that his Missouri tax liabilities for tax years 1992, 1993, and 1994 were discharged in his bankruptcy proceedings. Among the debts scheduled by Neeter in his bankruptcy schedules is a debt to

---

1. The Code is set forth in 11 U.S.C. §§ 101–1330 (1994). Unless otherwise indicated, all "§" references are to the Code.

452

MDOR for these taxes in the total amount of $26,841.21.

Neeter timely filed his original returns for these tax years. According to each of the returns, Neeter was due a refund. The IRS apparently disputed Neeter's returns for those years and the matter was taken to the United States Tax Court. According to the stipulated facts in this case, after the Tax Court rendered its decision, Neeter was required to file amended Missouri tax returns. The amended returns showed that Neeter owed taxes for 1992, 1993, and 1994.

Defendant MDOR contends that these taxes are not discharged because they are excepted from discharge under § 523(a)(1)(A). More specifically, MDOR asserts that the taxes are entitled to priority under § 507(a)(8)(A) because Neeter's amended returns were filed within three years of his bankruptcy petition and/or the taxes were assessed within 240 days of his bankruptcy petition.

### I. Exception to Discharge: §§ 523(a)(1)(A) and 507(a)(8)(A)(i) and (ii)

A Chapter 7 bankruptcy discharge releases an individual debtor from all pre-

petition debts with the exception of the nondischargeable debts set forth in § 523. *See* 11 U.S.C. § 727(b). Under § 523(a)(1)(A), a tax is not discharged if it is entitled to priority.[2] An income tax is entitled to priority, under § 507(a)(8)(A)(i), if a return is last due less than three years before the bankruptcy petition date. It is also entitled to priority, under § 507(a)(8)(A)(ii), if the tax is assessed within 240 days of the petition date.[3]

MDOR asserts that Neeter's taxes are not dischargeable because they were entitled to priority under both § 507(a)(8)(A)(i) and § 507(a)(8)(A)(ii).

### A. Priority under § 507(a)(8)(A)(i)

Ordinarily, in a Chapter 7 proceeding, calculating which tax debts are dischargeable is a relatively simple process. Section 523(a)(1)(A), by reference to § 507(a)(8)(A)(i), provides that taxes for which a required return was due to be filed more than three years prior to a bankruptcy filing are dischargeable. Because Neeter timely filed his 1992, 1993, and 1994 tax returns, and the returns were due more than three years before he filed

---

**2.** Section 523(a)(1) states, in relevant part:

A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

11 U.S.C. § 523(a)(1) (1994).

**3.** Section 507(a)(8)(A) states, in relevant part:

(a) The following expenses and claims have priority in the following order:

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of filing of the petition; or

(iii) other than a tax of the kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

11 U.S.C. § 507(a)(8)(A) (1994).

his petition on November 2, 1999, any tax liabilities associated with the returns would normally be dischargeable. However, as a result of his case in the United States Tax Court, Neeter was required to file amended Missouri tax returns for 1992, 1993, and 1994. He filed amended returns for those years on October 29, 1998, less that one year before he filed his bankruptcy petition. The question that the Court must answer is whether the amended returns which Neeter was required to file are entitled to priority because they were filed less than three years before he filed his bankruptcy petition (even though original returns for those tax years were timely filed and were due more than three years before the petition was filed). In reaching its decision, the Court is mindful that exceptions to discharge are to be construed strictly against the creditor and liberally in favor of the debtor so as to further the bankruptcy policy of providing the debtor with a fresh start. *See In re Geiger*, 113 F.3d 848, 853 (8th Cir. 1997).

MDOR argues that because Neeter was required to file amended returns for 1992, 1993, and 1994, and the amended returns were due to be filed (and were filed) within three years of the filing of his bankruptcy petition, the taxes for these years were entitled to priority under the plain language of § 507(a)(8)(A)(i). As priority tax claims they are excepted from discharge under § 523(a)(1)(A).

Neeter argues that the returns he filed on October 29, 1998 were "reports" and were not "required returns" which would invoke the provisions of § 507(a)(8)(A)(i). The stipulated facts of this case, however, establish that Neeter filed more than "reports", he filed amended returns which were required to be filed under Missouri law. *See* R.S.Mo. § 143.601.[4]

Two courts have directly addressed the issue of whether amended returns, which were required to be filed, triggered the priority provisions of § 507(a)(8)(A)(i). In Oklahoma, debtors filed timely original returns for tax years 1981 and 1982 which were audited by the IRS ten years later. *In re Lamborn*, 181 B.R. 98 (Bankr. N.D.Okla.1995). The court found that Oklahoma law required the debtors to file amended state tax returns after their taxes were reassessed by the IRS. *Id.* at 102. The debtors filed amended state returns and a year later filed a Chapter 7 bankruptcy petition in July, 1993. The court held that the plain language of

4. R.S.Mo. § 143.601 states as follows:

*Report of change in federal taxable income*

If the amount of a taxpayer's federal taxable income reported on his federal income tax return for any taxable year is changed or corrected by the United States Internal Revenue Service or other competent authority, or as the result of a renegotiation of a contract or subcontract with the United States, the taxpayer shall report such change or correction in federal taxable income within ninety days after the final determination of such change, correction, or renegotiation, or as otherwise required by the director of revenue. Each such report shall state whether and wherein the determination is believed to be erroneous. **Any taxpayer filing an amended federal income tax return shall also file within ninety days thereafter an amended return under sections 143.011 to 143.996, and shall give such information as the director of revenue may require.** If a taxpayer does not file a federal income tax return under sections 143.011 to 143.996, then (1) For purposes of the first sentence of this section, he shall be deemed to have filed a return indicating no taxable income, and

(2) For purposes of the third sentence of this section, his initial federal income tax return shall be deemed to be an amended return.

The director of revenue may by regulation prescribe such exceptions to the requirements of this section as he deems appropriate. (emphasis added)

§ 507(a)(8)(A)(i) [5] granted priority to income tax returns which are both "required" to be filed and due to be filed within three years of the filing of a debtor's bankruptcy petition. *Id.* at 102–103. The court found that the debtors' amended tax returns were entitled to priority under § 507(a)(8)(A)(i) because they were "returns" which were required to be filed and were due to be filed within three years of the debtor's bankruptcy filing. *Id.* at 103.

A similar conclusion was reached in a bankruptcy proceeding in Nevada where a debtor filed an amended state tax return to reflect income from the sale of her residence. *In re Fernandez*, 188 B.R. 34 (Bankr.D.Nev.1995). In that case, a debtor failed to purchase another residence within two years of selling her home. She was required, under the state law of Hawaii, to file an amended state tax return to report the gain that she realized from the sale of her home. *Id.* She filed an amended return for tax year 1990 in April 1993. Eighteen months later she filed a Chapter 13 proceeding in Nevada wherein Hawaii's State Department of Taxation asserted a priority claim for the taxes due under the amended 1990 tax return. *Id.* Hawaii claimed a priority under § 507(a)(8)(A)(i) based on the fact that debtor was required to file the amended return and the return was due within three years of debtor's bankruptcy filing.

The debtor argued that Hawaii's tax claim was not entitled to priority because the debtor's 1990 original tax return was due and filed more than three years before her bankruptcy filing date. Debtor, in effect, was asking the court to ignore the fact that an amended return was required and filed within three years of debtor's

bankruptcy petition. *Id.* at 35. The court found that Hawaiian state law required debtor to file an amended return based on the gain from the sale of her residence. The amended return was therefore "required" for purposes of § 507(a)(8)(A)(i). Because the return was required and was due to be filed (and was filed) within three years of the filing of the bankruptcy petition, § 507(a)(8)(A)(i) gave Hawaii's tax claim priority status. *Id.* at 36.

Only one case was found in which a tax claim was not granted priority under § 507(a)(8)(A)(i) [6] even though the debtors filed an amended tax return within three years of their bankruptcy petition. *See In re Wernimont*, 183 B.R. 181 (Bankr. N.D.Iowa 1994). However, this case is not instructive because it failed to mention whether the amended return was "required" to be filed nor did it address the legal effect, if any, of the filing of the amended return. The court simply summarily stated that the tax liability "did not come within the terms of" § 507(a)(8)(A)(i).

The Eighth Circuit Court of Appeals has addressed the competing interests Congress sought to balance when drafting § 507(a)(8)(A)(i) of the Bankruptcy Code:

'[a] three-way tension thus exists among (1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose "fresh start" should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting.'

---

**5.** In the case the statute was referred to as § 507(a)(7)(A)(i). In 1994 the Code was amended and this section was renumbered as § 507(a)(8)(A)(i).

**6.** The case refers to § 507(a)(7)(A)(i) which is the present § 507(a)(8)(A)(i).

*In re Waugh,* 109 F.3d 489, 492 (8th Cir.1997)(quoting S.Rep. No. 95–989, at 14 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5800). The Eighth Circuit stated further that:

> [t]o satisfy the interests of the 'tax collector,' Congress extended a three-year priority period to tax collecting authorities. Although a debtor is permitted to discharge tax debts which have grown 'stale,' Congress realized that '[a]n open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due.'

*Id.* (quoting H.R.Rep. No. 95–595, at 190 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6150).

In the present case, Neeter's tax returns for 1992, 1993, and 1994 were disputed in the United States Tax Court. At the conclusion of that litigation, Neeter was required, under R.S.Mo. § 143.601, to file amended Missouri returns for tax years 1992, 1993, and 1994. *See* Joint Stip. of Facts. On October 28, 1998, he timely filed amended state returns for those years showing that he owed taxes for each year. In January of 1999, the MDOR sent Neeter notices of deficiency for those tax years.

The Court finds that the IRS and the MDOR actively pursued Neeter for correct information concerning his returns for 1992, 1993, and 1994. Consequently, the tax debt for these years was not "stale." Rather, any disagreement concerning those tax years was finally resolved shortly before Neeter filed for bankruptcy relief. A denial of dischargeability of these debts will not frustrate the intent of Congress which balances a tax authority's ability to pursue the collection of taxes with the debtor's ability to obtain a fresh start. To

hold otherwise would create a strict three year statute of limitations which would apply even when, as in this case, the tax collecting authorities were actively seeking the resolution of a tax dispute.

■ In *Waugh,* the Eighth Circuit also recognized that " '[t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intention of its drafters.' " *Id.* at 493 (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). The plain meaning of § 507(a)(8)(A)(i) is that if a "return" is required to be filed and is due to be filed within three years of a bankruptcy petition, then any tax claim concerning those returns is entitled to priority. Like the state statues in *Lamborn* and *Fernandez,* Missouri law required Neeter to file amended state tax returns for tax years 1992, 1993, and 1994. Those returns were filed in October 1998. A little over a year later, Neeter filed his Chapter 7 petition. Therefore, the returns satisfy the plain meaning requirements of § 507(a)(8)(A)(i), that is, they were "required" to be filed and they were due to be filed within three years of Neeter's bankruptcy petition. This literal application of the terms of § 507(a)(8)(A)(i) will not produce a result demonstrably at odds with the intention of Congress with respect to that statute. The end result is that Neeter's tax obligations to MDOR for tax years 1992, 1993, and 1994 are entitled to priority under § 507(a)(8)(A)(i) and are therefore, exempt from discharge under § 523(a)(1)(A).

**B. Priority under § 507(a)(8)(A)(ii)**

■ As an alternative ground for asserting that Neeter's Missouri tax debt is not dischargeable, MDOR argues that Neeter's taxes are entitled to priority be-

cause they were assessed within 240 days of the filing of his bankruptcy petition. An assessment within 240 days grants an income tax claim priority under § 507(a)(8)(A)(ii). Determining when taxes are assessed for the purposes of § 507(a)(8)(A)(ii) is a question of federal law. *In re O'Connell,* 246 B.R. 332, 334 (8th Cir. BAP 2000). A state's definition of the term "date of assessment" is not controlling for purposes of § 507(a)(8)(A)(ii). *Id.* at 335. Rather, state taxes are assessed when the amount of tax liability is finally determined. *Id.* Therefore, to determine when a debtor's state income tax liability is assessed, a court must look to state law to establish when the amount of tax liability is finally determined. *Id.*

■ Neeter's Missouri income tax liability is governed by Missouri Revised Statutes Chapter 143. Under R.S.Mo. § 143.701 [7], if a taxpayer files an amended return pursuant to a change in his federal taxes, his tax will be deemed to be assessed upon the filing of the return if he concedes the accuracy of the of the federal change. Neeter argues that this language is controlling in the present case. He asserts that because he filed his amended tax returns more than 240 days before he filed his bankruptcy petition, his Missouri tax debt is not entitled to priority and is dischargeable.

Neeter's argument is not dispositive, however, because Missouri's definition of the timing of a tax assessment is not controlling. To determine when Neeter's taxes were assessed the Court must look to Missouri law to determine when the amount of tax liability is finally determined.

Under R.S.Mo. § 143.701, if a notice of deficiency is filed by MDOR in response to a taxpayer's return, the tax assessment shall be deemed to be final sixty days [8] after the notice of deficiency was mailed if the taxpayer does not protest the notice.

In the present case, MDOR filed a notice of deficiency for Neeter's 1993 and 1994 amended tax returns on January 12,

---

7.  Section 143.701 states as follows:
    *Assessment of tax*
    "1. The amount of tax which is shown to be due on the return (including revisions for mathematical errors) shall be deemed to be assessed on the date of filing of the return including any amended returns showing an increase of tax. In the case of a return properly filed without the computation of the tax, the tax computed by the director of revenue shall be deemed to be assessed on the date when payment is due. If a notice of deficiency has been mailed, the amount of the deficiency shall be deemed to be assessed on the date provided in section 143.621 if no protest is filed; or, if a protest is filed, then upon the date when the determination of the administrative hearing commission becomes final. If an amended return or report filed pursuant to section 143.601 concedes the accuracy of a federal change or correction, any deficiency in tax under sections 143.011 to 143.996 resulting therefrom shall be deemed to be assessed on the date of filing such report or amended return and such assessment shall be

timely notwithstanding any other provisions of sections 143.011 to 143.996. Any amount paid as a tax or in respect of a tax, other than amounts withheld at the source or paid as estimated income tax, shall be deemed to be assessed upon the date of receipt of payment, notwithstanding any other provision of sections 143.011 to 143.996.

2. If the mode or time for the assessment of any tax under sections 143.011 to 143.996, including interest, additions to tax, and penalties is not otherwise provided for, the director of revenue may establish the same by regulation.

3. The director of revenue may, at any time within the period prescribed for assessment, make a supplemental assessment, subject to the provisions of section 143.611 where applicable, whenever it is found that any assessment is imperfect or incomplete in any material aspect."

8.  *See* R.S.Mo. 143.621.

1999. MDOR filed a notice of deficiency for Neeter's 1992 amended return on January 26, 1999. Neeter did not file a protest to these notices. Therefore, his assessments became final sixty days after the notices were sent, that is, on March 13, 1999, and March 27, 1999, respectively. Both of these dates are within 240 days of when Neeter filed his bankruptcy petition on November 2, 1999. Consequently, Neeter's tax debt for tax years 1992, 1993 and 1994 are entitled to priority under § 507(a)(8)(A)(ii).

## II. Conclusion

Neeter's tax debt which is at issue in this case is entitled to priority under both § 507(a)(8)(A)(i) and § 507(a)(8)(A)(ii). Because the debt is entitled to priority under those sections of the Code it is excepted from discharge under § 523(a)(1)(A).

An Order consistent with this Memorandum Opinion will be entered this date.